UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                   )
RUBI LEVI and EMILY CHICOINE, on   )
behalf of themselves and others    )
similarly situated,                )
                                   )
         Plaintiffs,               )
                                   )
    v.                             )    C.A. No. 15-216 S
                                   )
GULLIVER'S TAVERN INCORPORATED,    )
SOLID GOLD PROPERTIES, INC.,       )
THOMAS TSOUMAS, and                )
PATRICIA TSOUMAS, all d/b/a        )
THE FOXY LADY,                     )
                                   )
         Defendants.               )
_____)

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, Chief Judge.

This case involves a Providence night club's alleged misclassification of its exotic dancers as independent contractors. Plaintiffs allege that this misclassification deprived them of overtime wages and violated the Fair Labor Standards Act ("FLSA"), Rhode Island Minimum Wage Act ("RI MWA"), and the Rhode Island Payment of Wages Law ("RI PWL").

Before the Court is Defendants' Partial Motion to Dismiss ("Motion") (ECF No. 15) in which they seek dismissal of two claims — Count II, alleging a violation of the FLSA's tip credit provision, and Count V, alleging a violation of the RI PWL — and three defendants – Thomas Tsoumas, Patricia Tsoumas, (collectively

the "Tsoumases"), and Solid Gold Properties, Inc. ("Solid Gold"). For the reasons that follow, Defendants' Motion is GRANTED in part and DENIED in part.

I.   Background[1]

Rubi Levi ("Levi") and Emily Chicoine ("Chicoine") (collectively, "Plaintiffs") are former exotic dancers at the Foxy Lady (the "Club") in Providence. (Am. Compl. ¶¶ 1-2, ECF No. 13.) As dancers, Plaintiffs provided "adult" entertainment to customers. According to Plaintiffs, they were "part of the Defendants' usual business operations," and subject to significant control from the Club. (Id. ¶¶ 18(a)-18(h).) For example, Plaintiffs allege that the Club controlled their schedules by requiring Plaintiffs to work at least three shifts per week, to work holiday parties throughout the year, and to report their availability to management for scheduling purposes. (Id. ¶¶ 18(e), 18(g), 18(h).) Plaintiffs also allege that the Club controlled how they worked during their shifts by requiring them to perform a certain number of dances on stage each shift, and encouraging them to solicit private dances from customers. (Id. ¶ 18(d).) And Plaintiffs allege that the Club supervised them by, among other things, employing "house moms" to make sure the dancers followed

---

[1] Since this is a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), the Court treats the factual allegations set forth in the Amended Complaint as true. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007).

house rules and adhered to their schedules. (Id. ¶¶ 18(c), 18(f).) Plaintiffs' Amended Complaint, however, is notably silent on who supervised them and who set the policies and schedules to which dancers had to abide.

As compensation, Plaintiffs allege that the Club allowed dancers to keep the tips they received from customers but never paid them an hourly wage. (Id. ¶ 19.) Additionally, the Club required Plaintiffs to pay the Club a $40 per week "shift fee," "tip out" certain club employees, and pay fines when Plaintiffs violated Club rules. (Id. ¶¶ 20-22.)

II. Standard of Review

When considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts must view the facts contained in the pleadings in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008).  To survive the motion, however, the plaintiff must present "factual allegations that 'raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007)). Put another way, "[w]hile detailed factual allegations are not required, 'a formulaic recitation of the elements of a cause of action' is not sufficient. DeLucca v. Nat'l Educ. Ass'n of Rhode

3

Island, No. C.A. 13-155L, 2015 WL 2037547, at *1 (D.R.I. May 5, 2015) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

III. Discussion

    A.   Count II – Unlawful Tip Sharing Under the FLSA

Count II of the Amended Complaint alleges that Defendants violated the FLSA's "tip credit" provision when they required Plaintiffs to share their tips with employees who were ineligible to receive tips. The FLSA allows employers to pay certain service employees a reduced minimum wage, provided the employees earn the full minimum wage through tips. See 29 U.S.C. § 203(m). The difference between the full minimum wage and the tipped employees' minimum wages is commonly referred to as a tip credit. See Perez v. Lorraine Enters., Inc., 769 F.3d 23, 27 (1st Cir. 2014). Generally, employers lose the right to take the tip credit if they require employees to share their tips with ineligible employees, giving rise to a claim under § 203(m). Id. For such a tip credit claim to exist, however, employers must actually take the tip credit. See Cumbie v. Woody Woo, Inc., 596 F.3d 577, 581 (9th Cir. 2010) ("Since [defendant] did not take a tip credit, we perceive no basis for concluding that [defendant's] tip pooling arrangement violated section 203(m) [of the FLSA]."). If employers deduct from employees' tips and still pay them the full minimum wage, the sharing of tips does not implicate § 203(m) of the FLSA. See Stephenson v. All Resort Coach, Inc., No. 2:12-CV-1097 TS,

2013 WL 4519781, at *5 (D. Utah Aug. 26, 2013) ("Courts interpreting § 203(m) have held that where an employer does not take a tip credit, no § 203(m) violation has occurred. It is only when an employer takes a tip credit that compliance with § 203(m) is required.").

Here, Plaintiffs allege that Defendants did not pay them a base wage at all. (Am. Compl. ¶ 19.) They do not allege that they received a reduced minimum wage that the Club offset by the dancers' tips. Consequently, Plaintiffs have failed to plead an essential element of a claim under §203(m) and Count II fails to state a claim upon which relief can be granted.

At oral argument, Plaintiffs suggested that their real reason for bringing Count II was preemptive; they included it to protect against Defendants reducing their damages by claiming the tip credit. Plaintiffs' concern is well founded and the Court dismisses Count II without prejudice. Plaintiffs are free to raise this argument as a defense should Defendants seek the tip credit during the pendency of this litigation.

B.   Count V – Unlawful Wage Deductions Under the RI PWL

In Count V, Plaintiffs allege that the fees and fines they paid to Defendants constituted unlawful wage deductions in violation of the RI PWL. Defendants demur, arguing that the statute does not restrict employers from assessing such fees and fines. Neither party, however, cites to any persuasive authority

5

in support of their arguments, nor has the Court found any. In light of this, and the fact that determining Plaintiffs' independent contractor status could negate the need to reach the RI PWL question, the Court denies Defendants' motion on this claim without prejudice. The parties are free to reassert their RI PWL arguments in conjunction with a motion on the merits of Plaintiffs' independent contractor status.

C.  Individual Defendants

Defendants also move to dismiss Solid Gold and the Tsoumases from the action, arguing that Plaintiffs have not pled facts sufficient to hold the three defendants liable under the FLSA, RI MWL, and RI PWL. With regard to Solid Gold, Defendants concede in their motion that Plaintiffs can state a claim against the other corporate entity named in the Amended Complaint, Gulliver's Tavern, Incorporated ("Gulliver's Tavern"). The Court finds no basis, at least based on the facts alleged, to distinguish between Gulliver's Tavern and Solid Gold. Accordingly, Defendants' motion as to Solid Gold is denied.

Defendants' motion as to the Tsoumases, however, is a different matter. Each statute implicated in Plaintiffs' Amended Complaint predicates individual liability on the existence of an employer-employee relationship. See 29 U.S.C. §§ 203(m), 206 (FLSA); R.I. Gen. Laws §§ 28-12-2, 28-12-3 (R.I. MWL); R.I. Gen. Laws §§ 28-14-1, 28-14-2, 28-14-3 (RI PWL). Under the FLSA,

6

liability attaches to any "employer," which is defined to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." Manning v. Boston Med. Ctr. Corp., 725 F.3d 34, 47 (1st Cir. 2013) (quoting 29 U.S.C. § 203(d)).  While acknowledging the breadth of this definition, the First Circuit has noted that Congress did not intend the definition to apply to "any corporate officer or other employee" even when that officer had "ultimate operational control over payroll matters . . . ." Donovan v. Agnew, 712 F.2d 1509, 1513 (1st Cir. 1983).  Instead, courts apply the economic realities test to determine individual liability, a multi-factor test that "focuse[s] on the role played by the corporate officers in causing the corporation to undercompensate employees . . . ." Manning, 725 F.3d at 47 (quoting Baystate Alternative Staffing, Inc. v. Herman, 163 F.3d 668, 678 (1st Cir. 1998)).

Rhode Island employs a similar definition of employer, but one that focuses on the amount of control an employer has over an employee.  While a fact dependent inquiry, the existence of an employer-employee relationship turns on "the employer's right or power to exercise control over the method and means of performing the work . . . ." Cayer v. Cox Rhode Island Telecom, LLC, 85 A.3d 1140, 1144 (R.I. 2014).

Here, the only allegation Plaintiffs attribute directly to the Tsoumases is that they are "the owners, operators, and managing

7

partners of the Foxy Lady." (Am. Compl. ¶¶ 7, 8, ECF No. 13.) The Amended Complaint is silent on the type of authority the Tsoumases exercised over the business, the control they exercised over Plaintiffs, and the role they played in crafting the policies or in the conduct that allegedly violated the FLSA, RI MWL, and RI PWL.[2] While Plaintiffs have pled the Tsoumases' ownership interest in the Club – a factor courts consider in an individual liability analysis – the First Circuit has made clear that it is not a dispositive factor. See Baystate, 163 F.3d at 678. Lacking factual allegations linking the Tsoumases to the violations Plaintiffs allege in their Complaint, Plaintiffs have failed to state a claim against them in their individual capacities.

IV. Conclusion

For the foregoing reasons, Defendants' Partial Motion to Dismiss is GRANTED IN PART and DENIED IN PART. The Court GRANTS Defendants' Motion to Dismiss as to Count II, and as to Thomas

---

[2] At oral argument and in their Opposition, Plaintiffs argued that they made specific allegations against the Tsoumases by alleging, generally, that all "Defendants" engaged in certain conduct. This Court agrees with the holding in Schofield v. U.S. Bank N.A., No. CA 11-170-M, 2012 WL 3011759 (D.R.I. July 23, 2012), that general "reference to Defendants throughout 'Amended Complaint No. 2,' does not satisfy the requirement of pleading specific and plausible allegations." Id. at *5. "Without some semblance of factual allegations and an indication of which Defendant acted and when, that ties the Defendants' specific action to a recognized cause of action," Plaintiffs have not alleged claims against the individual defendants for which relief can be granted. Id.

8

Tsoumas and Patricia Tsoumas, and dismisses those claims without prejudice.  The Court DENIES Defendants' Motion to Dismiss as to Count V and Solid Gold Properties, Inc.

IT IS SO ORDERED.

/s/ WESmith
William E. Smith
Chief Judge
Date:  February 10, 2016