# Exhibit 11



## PERFORMER LICENSE AGREEMENT

THIS LICENSE AGREEMENT (the "Agreement") entered into as of the 4th day of January, 2014 by and between Gulliver's Tavern, Incorporated d/b/a The Foxy Lady (the "Club"), a Rhode Island corporation and Ruby Levi of Mapleville, Rhode Island (the "Performer").

### RECITALS:

WHEREAS, the Club conducts a nightclub business at 318 Chalkstone Avenue, Providence, Rhode Island (the "Premises").

WHEREAS, Performer is a self-employed entertainer.

WHEREAS, Performer wishes to utilize, from time to time, space in the Premises in order to entertain patrons of the Club.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. **Grant of License.** Subject to the terms and conditions contained herein, the Club hereby grants to Performer a temporary, revocable license (the "License") and Performer shall have a non-exclusive right to use and occupy the Premises. This Agreement shall be limited to Performer's use and occupancy of the Club as a Performer and Performer shall be entitled to perform entertainment services at the Club. Performer shall not use or occupy the Club or act or fail to act in any way which would constitute an event of default by Performer under this Agreement



GULLIVERS 000008

2. <u>Term</u>. This Agreement shall commence upon execution hereof and shall continue until terminated as hereinafter set forth.

3. <u>Rental Fee.</u> In consideration of the Club's granting to Performer the right to use and occupy the Premises under this Agreement, Performer hereby agrees to pay to the Club a rental and license fee as posted in the Premises.

4. <u>Compensation.</u> Performer shall be entitled to retain all tips and gratuities received from customers of the Club for Performer's performances, subject to administrative fees charged by the Club in exchange for processing of credit cards and redemption of Club Scrip. Any and all income to be received by Performer shall be from customers directly and not from the Club. However, the Club shall establish minimum fees (the "Performance Fees") for performances for table dances, private space performances and VIP space performances to be paid by customers based on industry custom and in consultation with Performer. The Club represents that the Performance Fees shall be competitive with fees charged at competitor establishments. Performer agrees not to charge a customer less than the Performance Fees for any performance unless the Performer first notifies the Club in writing of any charges to Performer's customers of a lower amount. However, nothing shall prevent Performer from receiving tips or other gratuities in excess of the Performance Fees. The Performer specifically acknowledges that the Performance Fees attributable to friction chair dances (i.e. "lap dances") or performances in private or semi-private VIP spaces are non-discretionary mandatory space/service charge to the customer and are not tips or gratuities to the Performer.

5. <u>Hours.</u> The Club is to provide to Performer the non-exclusive right, in common with other entertainers, to perform at the Club, during the Club's normal business hours. While Performer has no obligation to perform during any day or evening that the Club designates as a show period (a "Show Period") and has the right to accept or reject business engagements as Performer chooses, Performer agrees to perform during the Show Periods accepted by Performer and agrees not to leave the Premises during any such Show Period accepted by Performer. Performer agrees that if Performer misses any portion of the Show Period accepted by Performer, Performer may be subject to a late fee, as posted in the Premises.

6. <u>No Right To Control.</u> The Club recognizes and agrees that it shall have no right to control the matter or means by which Performer performs. Performer has discretion in deciding for whom, when, and how to perform, subject to all applicable laws. Performer is free to perform, or not perform, with a particular customer. Performer can decide not to do any performances on a given night unless Performer has previously accepted to perform during a Show Period pursuant to Section 5. If Performer chooses to perform, Performer negotiates with the customer on what the performance will entail. If Performer chooses to perform, Performer agrees not to perform in any manner which is in violation of any applicable law, regulation, ordinance, or this Agreement and any such violation shall result in immediate termination of this Agreement and Performer shall not be permitted on the Premises.

7. <u>Services Provided by the Club.</u> In addition to the use of the Club Premises, the Club shall provide the following services at the Club:

    a) Music (including ASCAP/BMI.SESAC fees);

    b) Dressing Room Facilities;

    c) Lockers;

    d) Wait Staff;

    e) Beverage Service;

    f) Advertisement of the Club (any advertisement specific to the Performer shall be at Performer's sole cost and expense and the Club shall have no obligation to advertise for the Performer);

    g) Disc Jockey ("DJ") (NOT compensated independently by the Club, however the Performer may provide voluntary gratuities to the DJ, if desired);

    h) "House Mom" (NOT compensated independently by the Club, however the Performer may provide voluntary gratuities to the House Mom, if desired); and

    i) "Hairdresser" (NOT compensated independently by the Club, however the Performer may provide voluntary gratuities to the Hairdresser, if desired).

Performer agrees that the fee in Section 3 does not include fees for the following services: hair and make-up artists, dressing room management and any other ancillary services which shall be contracted for and paid directly by Performer, at Performer's sole cost and expense.

8. Relationship Between the Parties.

(a) The Club and Performer each acknowledge and agree that the relationship of the parties hereto is that of the Club as "Licensor" and "Lessor", and the Performer as the "Licensee" and "Temporary Space Lessee", and is not an employee/employer relationship. Nothing in this Agreement shall be construed so as to create an employee/employer relationship between the parties hereto. Performer shall be solely responsible for obtaining and maintaining, at Performer's sole cost and expense, all necessary business licenses and permits and insurance, including but not limited to, health, disability and workers compensation, and for paying all federal, state and local taxes and contributions imposed upon any income earned by Performer at the Club. Performer agrees to indemnify, defend and hold the Club harmless from and against payment of any taxes on account of Performer's performance hereunder. Performer shall not be entitled to any form of compensation, benefits or payments from the Club.

(b) Nothing in this Agreement shall be deemed to constitute a partnership or joint venture between Club and Performer as the agent of the other party. Neither the Club nor Performer shall become liable or bound by any representation, act, or omission whatsoever of the other party.

(c) Performer acknowledges that she is obtaining the License solely to enable the Performer to entertain patrons of the Club. Accordingly, the Performer hereby waives any and all claims she may have against the Club to the extent that Performer hereafter claims that Club is an employer, agent, or partner with or of Performer, and releases fully and completely the Club from any claim, obligation, or liability that may arise by reason thereof. Performer specifically acknowledges that she is not an employee and therefore

GULLIVERS 000012

does not expect a minimum, overtime or other wage from the Club, nor any other benefit whatsoever from the Club, except the limited privilege granted to Performer by the License herein outlined and described. Performer may undertake to render similar services to other persons or entities at other locations and under other circumstances or arrangements at the sole discretion of the Performer. There are no rights granted by Club to Performer, except as provided and limited herein.

9.  Conduct on the Premises.

(a) Performer agrees to abide by and not violate any of the rules and regulations of the Club as may be modified from time to time hereafter by the Club, including but not limited to those rules listed on Exhibit "A" attached hereto.

(b) Performer recognizes that the Club holds one or more valuable governmental licenses and permits which may be revoked, cancelled, suspended or withdrawn as a result of certain illegal, immoral or other objectionable acts on the Premises by Performer. Accordingly, Performer agrees not to engage in any unlawful activity, or in any other activity on or about the Premises which could jeopardize or otherwise have the effect of causing the revocation, cancellation, suspension or withdrawal of licenses, permits or other governmental authorization or approvals required by the Club to conduct business on the Premises in an ordinary or customary matter.

(c) Performer represents and warrants to the Club that Performer has never been convicted of any crime involving moral turpitude including, but not limited to, prostitution. Performer acknowledges that she has read and is familiar with the Rhode Island General Laws regarding prostitution contained on Exhibit "B" attached hereto, and

Performer agrees not to engage in any activity on or about the Premises that would constitute a violation of any Rhode Island Laws regarding prostitution.

10. Termination.

(a) In the event Performer shall be in default of any obligation to pay money under this Agreement or in the event Performer shall be in default of any non-monetary provision of this Agreement (including but not limited to violation of any Federal, state or local laws or regulations), this Agreement shall immediately terminate and Performer waives the right to any and all notice(s) as may be required by law, and the Club shall have the right to (i) immediately withdraw the permission hereby granted to Performer to use the Premises; and (ii) remove Performer and her property therefrom, without being deemed to have committed any manner of trespass.

(b) Notwithstanding the above, either party may terminate this Agreement by giving the other party notice of such intention to terminate.

(c) In the event of termination of this Agreement, Performer shall surrender any use and occupancy of the Premises under the Temporary Space Lease, which shall immediately terminate.

(d) The remedies provided for herein shall be in addition to any other rights or remedies the Club may have hereunder or at law or equity.

11. No Expectation of Privacy.

(a) Performer acknowledges and agrees that Performer has no reasonable expectation of privacy, whatsoever, in or about the Premises and Performer expressly

waives any and all such rights to privacy as Performer may have to the fullest extent permitted by law. The Club shall have the express right to inspect any possessions of Performer, including without limitation, those contained in a locked or unlocked locker, at any time, for any reason and without notice to Performer.

(b) Performer is advised and hereby agrees that should the Club have a suspicion that the Performer is in possession of any illegal or controlled substances on the Premises, the Club may request Performer to undergo a medical test to detect and determine the presence of an illegal or controlled substance. In the event the Performer refuses to consent to any such tests, said refusal will be ground for immediate termination of this Agreement and Performer will be banned from the Premises.

12. <u>Release From Liability.</u> Performer agrees that the Club and any and all of its respective owners, directors, officers, employees, agents, designees, successors and assignees (collectively the "Affiliates") shall not be responsible or liable for any damage or injury to any property or to any person or persons at any time on or about the Premises arising from any cause whatsoever except the Club's willful misconduct. Performer shall not hold the Club or any or all of its Affiliates in any way responsible or liable for and will indemnify and hold the Club and any and all of its Affiliates harmless from and against any and all claims, liabilities, penalties, damages (including, without limitation, consequential damages, losses attendant to business interruption and losses or impairment of goodwill), judgments, expenses (including, without limitation, reasonable attorneys' fees and costs), losses, injuries to persons or property, actions, suits, and demands or any other matter of any nature arising out of, or in any way relating to or connected with,

Performer's use or occupancy of the Premises, including, without limitation, damage or injury caused by Performer. Performer further unconditionally releases the Club and its Affiliates from any and all claims, whether known or unknown, which Performer has or may have against the Club and its Affiliates.

13. **Notice.** Any notice required to be given pursuant to the provisions of this Agreement shall be in writing and shall be delivered personally, or mailed, registered or certified mail, postage prepaid, return receipt requested, to the party's address that the party to whom notice is to be given may have previously furnished to the other party in writing, provided that notice of an address change shall be deemed given only upon receipt.

14. **Governing Law.** This Agreement and all issues relating to its validity, interpretation, and performance shall be governed and construed in accordance with the laws of the State of Rhode Island.

15. **Benefit and Burden.** This Agreement shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective heirs, legal representatives, successors, and assigns, except to the extent assignability is limited herein.

16. **Assignment.** This Agreement may not be assigned, in whole or in part, by Performer and any attempt to do so shall be deemed void and of no force and effect.

17. <u>Entire Agreement.</u> This Agreement constitutes the entire understanding of the parties with respect to the subject matter hereof and supersedes all prior agreements and understandings, both written and oral, between the parties with respect to the subject matter hereof. No representations or warranties have been made by either party to the other, or by anyone else, except as expressly set forth in this Agreement. No prior oral or written statements, representations, promises and inducements have been made by either of the parties relating to the subject matter hereof which are not embodied in this Agreement. Any prior agreement between the parties with respect to the subject matter hereof is hereby terminated and of no further force and effect. Performer expressly acknowledges that she is not owed any money from and has no other claims against the Club.

18. <u>Amendment.</u> This Agreement may not be amended or modified except by a written instrument signed by the parties hereto.

PERFORMER ACKNOWLEDGES THAT PERFORMER HAS READ AND REVIEWED THIS AGREEMENT INCLUDING THE ATTACHED EXHIBITS IN ITS ENTIRETY, THAT PERFORMER HAS BEEN GIVEN AN OPPORTUNITY TO ASK THE CLUB ANY QUESTIONS OR EXPRESS ANY CONCERNS ABOUT THIS DOCUMENT, AND THAT PERFORMER HAS HAD AN OPPORTUNITY TO CONSULT WITH AN ATTORNEY OF HER CHOICE PRIOR TO ENTERING INTO THIS AGREEMENT. PERFORMER ACKNOWLEDGES THAT PERFORMER UNDERSTANDS THE TERMS AND CONDITIONS OF THIS AGREEMENT AND KNOWINGLY AND FREELY AGREES TO ABIDE BY THEM.

THIS AGREEMENT REPLACES ANY PRIOR AGREEMENT BETWEEN THE PARTIES, AND SINCE THIS AGREEMENT IS THE MOST ACCURATE DESCRIPTION OF THE NATURE OF THE RELATIONSHIP OF THE PARTIES, AND REPRESENTS WHAT THE PARTIES INTENDED FOR THEIR RELATIONSHIP TO BE WHEN IT WAS ESTABLISHED, THE TERMS AND CONDITIONS HEREIN ARE RETROACTIVE TO AND DEEMED EFFECTIVE

FROM THE DATE OF ANY PRIOR AGREEMENT OR RELATIONSHIP BETWEEN THE PARTIES, SHOULD ONE EXIST.

IN WITNESS THEREOF, the parties have executed this License Agreement the day and year first above written, and Performer acknowledges receipt of a copy of this Agreement.

PERFORMER: _____

Ruby Levi
(PRINT OR TYPE NAME)

GULLIVER'S TAVERN,
INCORPORATED

By: _____

GULLIVERS 000018

EXHIBIT A

## CLUB RULES FOR ENTERTAINERS

- YOU MUST POSSESS PROPER PICTURE IDENTIFICATION SHOWING YOU ARE AT LEAST 21 YEARS OLD
- HAVE RESPECT FOR OTHER ENTERTAINERS
- DO NOT LEAVE THE PREMISES WITH A CUSTOMER OR MEET A CUSTOMER OUTSIDE THE PREMISES
- NO POSSESSION OR USE OF ILLEGAL DRUGS ON THE PREMISES
- NO EXCESSIVE DRINKING IN THE CLUB
- YOU MUST BE DRESSED BEFORE YOU LEAVE THE STAGE OR DANCE AREA
- DO NOT ENGAGE IN SEXUAL ACTS OF ANY NATURE ON THE CLUB PREMISES
- CUSTOMERS ARE NOT ALLOWED TO TOUCH YOUR BREASTS OR GENITAL AREA
- TWO FEET ARE TO REMAIN ON THE FLOOR WHEN IN ANY DANCE AREA
- ALL BOOTHS, CABANAS AND OTHER SEMI PRIVATE ROOMS ARE SUBJECT TO INSPECTION AT ANY TIME
- ALL PURSES, BAGS, AND LOCKERS ARE SUBJECT TO SEARCHES IF DRUG ACTIVITY IS SUSPECTED
- NO ONE IS ALLOWED TO ENTER THE DJ AREA FOR ANY REASON
- ANY PROBLEMS SEE A FLOOR HOST OR HOUSEMOM

EXHIBIT B

# RHODE ISLAND GENERAL LAWS CONCERNING PROSTITUTION

### § 11-34.1-1. Definitions

The following words and phrases, when used in this chapter, have the following meanings:

(1) "Sexual conduct" means sexual intercourse, cunnilingus, fellatio, anal intercourse, and digital intrusion or intrusion by any object into the genital opening or anal opening of another person's body, or the stimulation by hand of another's genitals for the purposes of arousing or gratifying the sexual desire of either person.

(2) "Commercial sexual activity" means any sexual conduct which is performed or promised in return for a fee.

(3) "Fee" means anything of monetary value, including but not limited to money, given as consideration for sexual conduct.

### § 11-34.1-2. Prostitution

(a) A person is guilty of prostitution when such person engages or agrees or offers to engage in sexual conduct with another person in return for a fee. Any person found guilty under this section shall be deemed guilty of a misdemeanor and shall be subject to imprisonment for a term not exceeding six (6) months, or to a fine of not less than two hundred fifty dollars ($250) nor more than one thousand dollars ($1,000), or both.

(b) Any person found guilty of a subsequent offense under this section shall be subject to imprisonment for a term of not more than one year, or a fine of not less than five hundred dollars ($500) nor more than one thousand dollars ($1,000), or both.

(c) Any proceeds derived directly from a violation of this section are subject to seizure and forfeiture and further proceedings shall be had for their forfeiture as is prescribed by law in chapter 21 of title 12.

(d) In any prosecution for a violation under this section it shall be an affirmative defense if the accused was forced to commit a commercial sexual activity by:

(1) Being threatened or, subjected to physical harm;

(2) Being physically restrained or threatened to be physically restrained;

(3) Being subject to threats of abuse of law or legal process;

(4) Being subject to destruction, concealment, removal or confiscation, of any passport or other immigration document, or any other actual or purported governmental identification document; or

(5) Being subject to intimidation in which the accused's physical wellbeing was perceived as threatened.

§ 11-34.1-3. Procurement of sexual conduct for a fee

(a) A person is guilty of procuring or attempting to procure sexual conduct for the payment of a fee if they engage or seek to engage in sexual conduct for any type of fee and/or pay or agree to pay any type of fee for sexual conduct, regardless of the time, place or location of the procurement, attempted procurement, payment, attempted payment or conduct. Any person found guilty under this section shall be deemed guilty of a misdemeanor and shall be subject to imprisonment for a term not exceeding one year, or to a fine of not less than two hundred fifty dollars ($250) nor more than one thousand dollars ($1,000), or both.

(b) Any person found guilty of a subsequent offense under this section shall be subject to imprisonment for a term not exceeding one year, or a fine of not less than five hundred dollars ($500) nor more than one thousand dollars ($1,000), or both.

GULLIVERS 000021