**Exhibit 13**

# Exhibit 13

## PERFORMER LICENSE AGREEMENT

THIS LICENSE AGREEMENT (the "Agreement") entered into as of the 28th day of August, 2015 by and between Gulliver's Tavern, Inc. d/b/a The Foxy Lady (the "Club"), a Rhode Island corporation and _____ of _____ (the "Performer").

WHEREAS, the Club conducts a nightclub business at 318 Chalkstone Avenue, Providence, Rhode Island (the "Premises").

WHEREAS, Performer is a self-employed entertainer, who maintains an occupation that is distinct from the operations of the Club.

WHEREAS, Performer wishes to utilize, from time to time, space in the Premises in order to entertain her patrons.

NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. Grant of License. Subject to the terms and conditions contained herein, the Club hereby grants to Performer a temporary, revocable license (the "License") and Performer shall have a non-exclusive right to use and occupy the Premises for the purpose of entertaining patrons. Performer shall not use or occupy the Club or act or fail to act in any way which would constitute an event of default by Performer under this Agreement.

2. Term. This Agreement shall commence upon execution hereof and shall continue to govern the parties' relationship, however long it may last, until terminated as hereinafter set forth.

3. License Fee. In consideration of the Club's granting to Performer the right to use and occupy the Premises under this Agreement, Performer hereby agrees to pay to the Club a License Fee in the amount of forty dollars ($40.00) per week, or in such other amount as the parties shall from time-to-time agree.

4. Compensation.

a) Any and all income to be received by Performer shall be from her customers directly and not from the Club. Performer shall be entitled to retain all tips and gratuities received from patrons for Performer's performances.

b) Performer may, at her discretion, accept and make use of Club Scrip in order to obtain access to the ability to accept compensation charged to the credit cards of her patrons. To the extent that the Performer elects to accept and make use of Club Scrip, such use shall be subject to administrative fees charged by the Club.

c) In order to respond to demand for access to certain facilities in the Premises, the Club may establish minimum fees for performances that make use of such facilities, including for example table dances, private space performances and VIP space performances to be paid by customers based on industry custom (the "Space Fees"). Performer agrees not to charge a customer less than the designated Space Fees for any performance without the prior express consent of the Club. Nothing shall prevent Performer from receiving tips or other gratuities in any amount in excess of the Space Fees. The Performer specifically acknowledges that the Space Fees attributable to friction chair dances (i.e. "lap dances") or performances in private or semi-private VIP spaces are a mandatory charge to the customer for the use of certain space on the Premises, and such amounts and are not tips or gratuities to the Performer.

5. Schedule of Performances. The Club will provide Performer the non-exclusive right, in common with other performers, to perform at the Club. In order to respond to a high level of demand among performers for limited space and to maximize the value of the License provided by this Agreement, the Club will take steps to schedule reservations for performers to work in advance over the course of each week based on each performer's expressed availability. Performer may also appear and perform at the Club without an advanced reservation, to the extent consistent with the Club's efforts to accommodate the schedules of other performers. To the extent that Performer has accepted a scheduled reservation to perform at the Premises, but fails to appear at the time and date of her reservation or leaves before the expiration of her reservation, Performer agrees to pay a reasonable non-appearance fee to compensate the Club for the burden and expense imposed on the Club and its efforts to coordinate a schedule for the limited space available at the Premises.

6. No Right to Control. The Club shall have no right to control the manner or means by which Performer performs. Performer has discretion in deciding for whom, when, and how to perform, subject to all applicable laws. Performer is free to perform, or not perform, for a particular customer. If Performer chooses to perform, Performer will negotiate with her customer as to the price of the performance what the performance will entail. Performer agrees not to perform in any manner which is in violation of any applicable law, regulation, or ordinance, subject to immediate termination of this Agreement and the License. The Club shall not provide training, performance evaluations, or supervision over the manner in which Performer conducts her work.

7. Services Provided by the Club. In addition to the use of the Premises, the Club shall provide the following services at the Club:

a) Music (including ASCAP/BMI/SESAC fees);
b) Dressing Room Facilities;
c) Lockers;
d) Wait Staff;
e) Beverage Service; and
f) Advertisement of the Club (any advertisement specific to the Performer shall be at Performer's sole cost and expense, and the Club shall have no obligation to advertise for the Performer).

2

Performer agrees that the License Fee in Section 3 does not include the following services: hair and make-up artists, dressing room management and any other ancillary services, which shall be contracted for and paid directly by Performer to the extent that she desires to use such services, at Performer's sole cost and expense. Performer also agrees that any gratuities she may provide to other service providers at the Premises are entirely at her own discretion, including without limitation wait staff, bartenders, disc jockeys, hairdressers, make-up artists, "house moms" or other attendants at the Premises.

8. Relationship Between the Parties.

a) The Club and Performer each acknowledge and agree that the relationship of the parties hereto is that of the Club as "Licensor" and "Lessor," and the Performer as the "Licensee" and "Temporary Space Lessee," and is not an employee/employer relationship. The parties are independent contractors, and nothing in this Agreement shall be construed to create an employee/employer relationship between them. Performer shall be solely responsible for obtaining and maintaining, at Performer's sole cost and expense, all necessary business licenses and permits and insurance, including but not limited to, health, disability and workers compensation, and for paying all federal, state and local taxes and contributions imposed upon any income earned by Performer. Performer shall not be entitled to any form of compensation, benefits or payments from the Club, and Performer agrees to indemnify, defend and hold the Club harmless from and against claims or demands for any sums claimed to be payable by the Club on account of Performer's performance hereunder.

b) Nothing in this Agreement shall be deemed to constitute a partnership or joint venture between Club and Performer as the agent of the other party. Neither the Club nor Performer shall become liable or bound by any representation, act, or omission whatsoever of the other party.

c) Performer acknowledges that she is obtaining the License solely to enable the Performer to entertain patrons at the Premises. Accordingly, the Performer hereby waives any and all claims she may have against the Club to the extent that Performer hereafter claims that Club is an employer, agent, or partner with or of Performer, and releases fully and completely the Club from any claim, obligation, or liability that may arise by reason thereof. Performer specifically acknowledges that she is not an employee and therefore does not expect a minimum, overtime or other wage from the Club, nor any other benefit whatsoever from the Club, except the limited privilege granted to Performer by the License herein outlined and described.

d) Performer may undertake to render similar services to other persons or entities at other locations and under other circumstances or arrangements at the sole discretion of the Performer.

e) Performer agrees that the Club and any and all of its respective owners, directors, officers, employees, agents, designees, successors and assignees (collectively

3

the "Affiliates") shall not be responsible or liable for any damage or injury to any property or to any person or persons at any time on or about the Premises arising from any cause whatsoever except the Club's willful misconduct. Performer shall not hold the Club or any or all of its Affiliates in any way responsible or liable for and will indemnify and hold the Club and any and all of its Affiliates harmless from and against any and all claims, liabilities, penalties, damages (including, without limitation, consequential damages, losses attendant to business interruption and losses or impairment of goodwill), judgments, expenses (including, without limitation, reasonable attorneys' fees and costs), losses, injuries to persons or property, actions, suits, and demands or any other matter of any nature arising out of, or in any way relating to or connected with, Performer's use or occupancy of the Premises, including, without limitation, damage or injury caused by Performer. Performer further unconditionally releases the Club and its Affiliates from any and all claims, whether known or unknown, which Performer has or may have against the Club and its Affiliates.

9.   Conduct on the Premises.

   a) Performer recognizes that the Club holds one or more valuable governmental licenses and permits, which could be revoked, cancelled, suspended or withdrawn as a result of illegal, immoral or other objectionable acts on the Premises by Performer. Accordingly, Performer agrees not to engage in any unlawful activity on or about the Premises.

   b) Performer represents and warrants that Performer has never been convicted of any crime involving moral turpitude including, but not limited to, prostitution. Performer acknowledges that she has read and is familiar with the Rhode Island General Laws regarding prostitution contained on Exhibit "A" attached hereto, and Performer agrees not to engage in any activity on or about the Premises that would constitute a violation of such laws.

10.   No Expectation of Privacy. Performer acknowledges and agrees that Performer has no reasonable expectation of privacy, whatsoever, in or about the Premises, and Performer expressly waives any and all such rights to privacy as Performer may have to the fullest extent permitted by law. The Club shall have the express right to inspect any area of the Premises, including without limitation, a locked or unlocked locker, at any time, for any reason and without notice to Performer.

11.   Termination.

   a) Either party may terminate this Agreement at any time by giving the other party notice of such intention to terminate, at which point the License granted hereunder shall automatically expire and be revoked.

   b) In the event Performer shall be in default of any obligation under this Agreement, this Agreement shall immediately terminate, and the Club shall have the right

4

to (A) immediately withdraw the License; and (B) remove Performer and her property from the Premises, without being deemed to have committed any manner of trespass.

12. Interpretation and Application of Agreement.

   a) Governing Law. This Agreement and all issues relating to its validity, interpretation, and performance shall be governed and construed in accordance with the laws of the State of Rhode Island or the Federal Arbitration Act, as applicable.

   b) Entire Agreement. This Agreement constitutes the entire understanding of the parties with respect to the subject matter hereof and supersedes all prior agreements and understandings, both written and oral, between the parties with respect to the subject matter hereof.

   c) Assignment. This Agreement may not be assigned, in whole or in part, by Performer and any attempt to do so shall be deemed void and of no force and effect.

   d) Amendment. This Agreement may not be amended or modified except by a written instrument signed by the parties hereto.

   e) No Interference with Law Enforcement. Nothing in this Agreement is intended to affect or in any way limit Performer's right to file a charge, claim or complaint with any administrative agency of any state or the federal government. Likewise, nothing in this Agreement is intended to affect or in any way limit Performer's right to participate and/or cooperate in any investigation by any such agency. Performer does, however, waive Performer's right to any monetary recovery in connection with any charge or claim filed by or with any administrative agency by Performer, on Performer's behalf, or on behalf of a group or class in which Performer is, or is eligible to be, a member. Performer understands that under the National Labor Relations Act, Performer is not prevented from acting in cooperation with others, including any concerted action, to challenge this Agreement in any forum, and Perform understands that Performer will not be retaliated against if Performer acts with others to challenge this Agreement.

   f) Adjustment of Disputes.

      i) Any dispute or claim arising under or with respect to this Agreement or the Parties' past, current, or future employment relationship (collectively "Covered Claims") shall be resolved exclusively through bi-lateral arbitration between Performer and the Club, including without limitation any claims relating to harassment or discrimination of any kind, the payment of wages or other compensation, any form of retaliation, the accommodation of a disability, or termination of employment. THE PARTIES HEREBY KNOWINGLY, VOLUNTARILY AND IRREVOCABLY WAIVE THEIR RIGHT TO BRING A LAWSUIT IN COURT AND THE RIGHT TO A TRIAL BY JURY. This dispute-resolution and jury-trial-waiver clause shall survive termination of the parties' relationship as contemplated by this Agreement.

5

ii) Performer also agrees that Covered Claims will only be arbitrated on an individual basis, and that both Performer and the Club waive the right to participate in or receive money from any class, collective, or representative proceeding. Performer may not bring a claim on behalf of other individuals, and any arbitrator hearing Performer's claim may not arbitrate any form of a class, collective, or representative proceeding. Performer further agrees to refrain from joining and to take all available measures to affirmatively opt out of any legal proceeding in which any person or entity asserts or attempts to assert a claim against the Club or its owners or officers on behalf of any actual or potential class or collective of which Performer is a member.

iii) Both Performer and the Club shall have the right to be represented by an attorney in arbitration. Performer understands that Performer must pay her own legal fees and costs, unless Performer wins and applicable law provides for an award of legal fees and costs.

iv) The parties agree that they will cooperate so that the dispute resolution proceeds on an expedited basis. The arbitration will be conducted in Providence, Rhode Island. Performer and the Club, to the fullest extent permitted by law, hereby submit to the personal jurisdiction of any proceeding or legal action arising from or relating to this contract or their employment relationship. Both parties waive any claim of inconvenient forum or improper venue for any proceeding brought under this clause.

v) No action concerning, related to, or arising out of this Agreement, any breach of or default under this contract, or the parties' relationship, may be commenced more than one (1) year after the occurrence of the events alleged to give rise to such claim.

vi) To file a demand for arbitration in accordance with this Agreement, either party may prepare a written demand setting forth his/her or its claim(s) and serve it on the other party. The parties further agree that (A) the arbitrator shall have the authority to issue an award or partial award without conducting a hearing on the grounds that there is no claim on which relief can be granted or that there is no genuine issue of material fact to resolve at a hearing, consistent with Rules 12 and 56 of the Federal Rules of Civil Procedure; (B) the arbitrator must issue his or her award in writing, setting forth in summary form the reasons for the arbitrator's determination; and (C) the arbitrator's authority shall be limited to deciding the case submitted by the Party bringing the arbitration, and therefore, no decision by any arbitrator shall serve as precedent in other arbitrations.

PERFORMER ACKNOWLEDGES THAT PERFORMER HAS READ AND REVIEWED THIS AGREEMENT INCLUDING THE ATTACHED EXHIBIT IN ITS ENTIRETY, THAT PERFORMER HAS BEEN GIVEN AN OPPORTUNITY TO ASK ANY

QUESTIONS OR EXPRESS ANY CONCERNS ABOUT THIS DOCUMENT, AND THAT PERFORMER HAS HAD AN OPPORTUNITY TO CONSULT WITH AN ATTORNEY OF HER CHOICE PRIOR TO ENTERING INTO THIS AGREEMENT. PERFORMER ACKNOWLEDGES THAT PERFORMER UNDERSTANDS THE TERMS AND CONDITIONS OF THIS AGREEMENT AND KNOWINGLY AND FREELY AGREES TO ABIDE BY THEM.

    IN WITNESS THEREOF, the parties have executed this License Agreement the day and year first above written and Performer acknowledges receipt of a copy of this Agreement.

PERFORMER: _[signature]_       JLLIVER'S TAVERN, INCORPORATED

                                                                        By: _[signature]_

(PRINT OR TYPE NAME)

DATED: 8/28/2015

## EXHIBIT A

## RHODE ISLAND GENERAL LAWS CONCERNING PROSTITUTION

### § 11-34.1-1 Definitions.

The following words and phrases, when used in this chapter, have the following meanings:

   (1) "Sexual conduct" means sexual intercourse, cunnilingus, fellatio, anal intercourse, and digital intrusion or intrusion by any object into the genital opening or anal opening of another person's body, or the stimulation by hand of another's genitals for the purposes of arousing or gratifying the sexual desire of either person.

   (2) "Commercial sexual activity" means any sexual conduct which is performed or promised in return for a fee.

   (3) "Fee" means any thing of monetary value, including but not limited to money, given as consideration for sexual conduct.

### § 11-34.1-2 Prostitution.

(a) A person is guilty of prostitution when such person engages or agrees or offers to engage in sexual conduct with another person in return for a fee. Any person found guilty under this section shall be deemed guilty of a misdemeanor and shall be subject to imprisonment for a term not exceeding six (6) months, or to a fine of not less than two hundred fifty dollars ($250) nor more than one thousand dollars ($1,000), or both.

(b) Any person found guilty of a subsequent offense under this section shall be subject to imprisonment for a term of not more than one year, or a fine of not less than five hundred dollars ($500) nor more than one thousand dollars ($1,000), or both.

(c) Any proceeds derived directly from a violation of this section are subject to seizure and forfeiture and further proceedings shall be had for their forfeiture as is prescribed by law in chapter 21 of title 12.

(d) In any prosecution for a violation under this section it shall be an affirmative defense if the accused was forced to commit a commercial sexual activity by:

   (1) Being threatened or, subjected to physical harm;

   (2) Being physically restrained or threatened to be physically restrained;

   (3) Being subject to threats of abuse of law or legal process;

(4) Being subject to destruction, concealment, removal or confiscation, of any passport or other Immigration document, or any other actual or purported governmental identification document; or

(5) Being subject to intimidation in which the accused's physical well being was perceived as threatened.

### § 11-34.1-3 Procurement of sexual conduct for a fee.

(a) A person is guilty of procuring or attempting to procure sexual conduct for the payment of a fee if they engage or seek to engage in sexual conduct for any type of fee and/or pay or agree to pay any type of fee for sexual conduct, regardless of the time, place or location of the procurement, attempted procurement, payment, attempted payment or conduct. Any person found guilty under this section shall be deemed guilty of a misdemeanor and shall be subject to imprisonment for a term not exceeding one year, or to a fine of not less than two hundred fifty dollars ($250) nor more than one thousand dollars ($1,000), or both.

(b) Any person found guilty of a subsequent offense under this section shall be subject to imprisonment for a term not exceeding one year, or a fine of not less than five hundred dollars ($500) nor more than one thousand dollars ($1,000), or both.