DocuSign Envelope ID: D659E580-F2FB-4CEA-A4BA-E4C9A572596F

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RUBY LEVI and EMILY CHICOINE, on behalf of themselves and all others similarly situated, | ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 1:15-cv-216-WES-PAS |
| | ) | |
| GULLIVER'S TAVERN, INCORPORATED, and SOLID GOLD PROPERTIES, INC., both d/b/a THE FOXY LADY | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**STIPULATION AND SETTLEMENT AGREEMENT**

      PLAINTIFFS, on behalf of themselves and all members of the SETTLEMENT CLASS, and DEFENDANTS enter into this AGREEMENT.[1]

## I.    RECITALS AND BACKGROUND.

      A.    PLAINTIFFS filed the ACTION on May 23, 2015. In the ACTION, PLAINTIFFS alleged that DEFENDANTS had misclassified them and the other individuals who provided exotic dancing services at the FOXY LADY as independent contractors. As a result of that misclassification, PLAINTIFFS alleged that DEFENDANTS had violated the Fair Labor Standards Act, 29 U.S.C. §§ 203 and 206, and Rhode Island General Laws §§ 28-13-3, 28-14-2, 2.2 and 19.1. In addition, PLAINTIFFS sought a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

      B.    After conducting discovery, the PARTIES cross-moved for summary judgment, DEFENDANTS moved to preclude class and collective action certification, and PLAINTIFFS moved for class certification under Federal Rule of Civil Procedure 23. On March 30, 2018, the COURT entered an order granting summary judgment to PLAINTIFFS, denying summary judgment to DEFENDANTS, and granting PLAINTIFFS' motion for class certification. On April 23, 2018, the COURT issued a memorandum in which it set forth the reasoning for its decision. DEFENDANTS thereafter filed a timely petition for interlocutory review of the

---

[1] Terms that appear in all caps have the meaning assigned to them in Section II of this AGREEMENT.

DocuSign Envelope ID: D659E580-F2FB-4CEA-A4BA-E4C9A572596F

COURT'S order granting class certification with the United States Court of Appeals for the First Circuit pursuant to Federal Rule of Civil Procedure 23(f). The First Circuit denied that petition on August 10, 2018.

C.    Following the First Circuit's order, the PARTIES engaged in extensive negotiations in an effort to resolve the ACTION. Those negotiations were conducted in writing, telephonically, during a full-day mediation facilitated by an impartial and experienced mediator, and over the course of several weeks following the mediation. In addition, the PARTIES, through their counsel, signed a Confidential Memorandum of Understanding dated November 19, 2019, but the COVID-19 pandemic presented an unexpected act of nature that rendered impossible proceeding with a settlement under all of the terms set for in the Confidential Memorandum of Understanding, which is now amended and superseded by this AGREEMENT, reached by the PARTIES after further arms-length and good faith negotiations.

D.    It is the desire and intention of the PARTIES that this AGREEMENT shall fully, finally, and forever completely settle, compromise, release, and discharge all RELEASED CLAIMS as to all members of the SETTLEMENT CLASS, and will result in the dismissal, with prejudice, of the ACTION.

E.    PLAINTIFFS' COUNSEL has conducted a thorough investigation of the claims that PLAINTIFFS asserted against DEFENDANTS in the ACTION. Based on their investigation, the discovery conducted during the course of the ACTION, and knowledge of the law governing the claims asserted by PLAINTIFFS, PLAINTIFFS' COUNSEL believe that the settlement of the RELEASED CLAIMS with DEFENDANTS on the terms set forth in this AGREEMENT is fair, reasonable, and adequate.

F.    DEFENDANTS deny any liability or wrongdoing associated with any and all past and present matters, disputes, claims, demands, and causes of action of any kind whatsoever in this ACTION. DEFENDANTS contend that they have complied in good faith with all applicable federal and state laws at all times. Should the ACTION have continued, DEFENDANTS would have vigorously contested PLAINTIFFS' efforts to recover damages and would have challenged, on appeal, the COURT'S orders granting class certification and summary judgment. By entering into this AGREEMENT, DEFENDANTS do not admit any liability or wrongdoing and expressly deny the same. Rather, it is expressly understood by the PARTIES that the AGREEMENT is being entered into by DEFENDANTS solely for the purpose of avoiding the expense and continued disruption of ongoing litigation. Nothing in the AGREEMENT, the settlement proposals exchanged by the PARTIES, or any motions filed or orders entered pursuant to the AGREEMENT may be construed or deemed as an admission by DEFENDANTS of any liability, culpability, negligence, or wrongdoing.

G.    This AGREEMENT shall automatically terminate, and the PARTIES automatically restored to their respective positions in the ACTION before the November 19,

2019, Confidential Memorandum of Understanding, if this AGREEMENT is terminated pursuant to section XII of this AGREEMENT, in which event this AGREEMENT shall not be offered, received, or construed as an admission of any kind concerning whether any class or collective is certifiable or any other matter.

## II.    DEFINITIONS.

A.    "ACTION" means the lawsuit captioned *Ruby Levi and Emily Chicoine, on behalf of themselves and all others similarly situated v. Gulliver's Tavern, Incorporated and Solid Gold Properties, Inc.*, Case No. 1:15-cv-00216-PAS, that is currently pending in the COURT.

B.    "ADMINISTRATOR" is a third-party claims administration firm mutually agreed upon by the PARTIES, retained by PLAINTIFFS' COUNSEL, and to be appointed by the COURT, which shall perform all of the administrative duties assigned by the PARTIES.

C.    "AGREEMENT" refers to this Stipulation and Settlement Agreement.

D.    "AUTHORIZED CLAIMANT" means a member of the SETTLEMENT CLASS, or the authorized legal representative of such member of the SETTLEMENT CLASS, who submits a valid CLAIM FORM and becomes entitled to receive a SETTLEMENT PAYMENT.

E.    "BAR DATE" means the date that is sixty (60) calendar days after the date on which the ADMINISTRATOR issues the NOTICE and CLAIM FORM to the members of the SETTLEMENT CLASS.

F.    "CERTIFIED CLASS" refers to the class certified by the COURT pursuant to Federal Rule of Civil Procedure 23 in its order dated March 30, 2018.

G.    "CLAIM FORM" means the document entitled "Claim Form & Release," along with its attachments, agreed to by the PARTIES and attached to this AGREEMENT as Exhibit B. A valid CLAIM FORM is one which has been executed by a member of the SETTLEMENT CLASS and received by the ADMINISTRATOR by the BAR DATE, or otherwise accepted and approved by PLAINTIFFS' COUNSEL prior to final disbursement of the GROSS SETTLEMENT from the QUALIFIED SETTLEMENT FUND.

H.    "COURT" means the United States District Court for the District of Rhode Island.

I.    "CY PRES BENEFICIARY" means a bona fide charitable organization designated by DEFENDANTS and approved by the COURT.

DocuSign Envelope ID: D659E580-F2FB-4CEA-A48A-54C9A572596F

J.      "DEFENDANTS" are Gulliver's Tavern, Incorporated, and Solid Gold Properties, Inc., together and separately.

K.      "FINAL APPROVAL ORDER" refers to an order by the COURT: (1) fully consistent with the terms of this AGREEMENT in all respects; (2) adjudging the terms of the AGREEMENT to be fair, reasonable and adequate, and directing consummation of its terms and provisions; (3) approving and awarding PLAINTIFFS' COUNSEL'S FEES and the SERVICE AWARDS; (4) certifying the SETTLEMENT CLASS; (5) entering FINAL JUDGMENT; and (6) asserting and retaining jurisdiction over the claims alleged, the PARTIES, and the implementation and administration of the AGREEMENT.

L.      "FINAL APPROVAL HEARING" refers to a hearing at which the COURT may approve, in final form, the AGREEMENT, and make such other final rulings as are contemplated by this AGREEMENT.

M.      "FINAL EFFECTIVE DATE" refers to the first business date after all of the following events and conditions have been met or have occurred: (1) the COURT enters a PRELIMINARY APPROVAL ORDER; (2) the BAR DATE passes; (3) the COURT enters the FINAL APPROVAL ORDER; (4) the deadline passes without action by counsel for the PARTIES to terminate the AGREEMENT; and (5) the time to appeal from the FINAL APPROVAL ORDER expires and no notice of appeal has been filed or in the event that an appeal is filed, the appellate process is exhausted and the FINAL APPROVAL ORDER has remained intact in all material respects.

N.      "FINAL JUDGMENT" refers to a judgment entered by the COURT in conjunction with the FINAL APPROVAL ORDER that dismisses the ACTION and RELEASED CLAIMS with prejudice and without costs, except as otherwise provided for in this AGREEMENT, as to all SETTLEMENT CLASS members.

O.      "FOXY LADY" refers to the venue styled as the "Foxy Lady" gentlemen's club located at 318 Chalkstone Avenue in Providence, Rhode Island 02908.

P.      "GROSS SETTLEMENT" means the monetary sum of one million five hundred thousand dollars and no cents ($1,500,000.00), to be paid on the schedule set forth in Section V.E. The GROSS SETTLEMENT represents the maximum amount that DEFENDANTS shall pay pursuant to this AGREEMENT, inclusive of all SETTLEMENT PAYMENTS, PLAINTIFFS' COUNSEL'S FEES, the SERVICE AWARDS, and SETTLEMENT EXPENSES, and any and all payroll taxes payable by DEFENDANTS on the W-2 portion of all SETTLEMENT PAYMENTS.

DocuSign Envelope ID: D659EF80-F2EB-4CEA-A4BA-E4C9A572596F

Q.      "MORTGAGE" refers to the instrument provided by Solid Gold Properties, Inc. to secure the GROSS SETTLEMENT, attached to this AGREEMENT as Exhibit D, and incorporated by reference as a part of this AGREEMENT.

R.      "MORTGAGEE" refers to PLAINTIFFS' COUNSEL on behalf of, solely for the benefit of and as agents for RELEASING PERSONS.

S.      "MORTGAGOR" refers to Solid Gold Properties, Inc. and its successors, assigns and grantees.

T.      "NOTICE" refers to the notice agreed upon by the PARTIES and that is attached to this AGREEMENT as Exhibit A.

U.      "OBJECTION PERIOD" refers to the period beginning with the date NOTICE and CLAIM FORMS are issued to members of the SETTLEMENT CLASS and ending sixty (60) calendar days thereafter.

V.      "OBJECTOR" is a member of the SETTLEMENT CLASS who has timely and properly objected to the AGREEMENT during the OBJECTION PERIOD.

W.      "OPT-OUT" refers to any member of the SETTLEMENT CLASS who timely and properly files a request for exclusion during the OPT-OUT PERIOD.

X.      "OPT-OUT PERIOD" refers to the period beginning with the date that the NOTICE and CLAIM FORM are issued to members of the SETTLEMENT CLASS and ending sixty (60) calendar days thereafter.

Y.      "PARTIES" refers to PLAINTIFFS, together and separately, the SETTLEMENT CLASS, and DEFENDANTS, together and separately, and, in the singular, refers to any of them, as the context makes apparent.

Z.      "PLAINTIFFS" means Ruby Levi and Emily Chicoine, together and separately.

AA.      "PLAINTIFFS' COUNSEL" refers to Stephen Brouillard of Bianchi & Brouillard P.C. and Stephen Churchill and Brant Casavant of Fair Work P.C.

BB.      "PLAINTIFFS' COUNSEL'S FEES" means the total amount of PLAINTIFFS' COUNSEL'S attorneys' fees and costs approved by the COURT upon application by PLAINTIFFS' COUNSEL, which shall not exceed thirty-three and one-third percent (33.3%) of the GROSS SETTLEMENT.

CC.      "PRELIMINARY APPROVAL ORDER" refers to the order of the COURT: (1) fully consistent with the terms of this AGREEMENT in all respects; (2) asserting jurisdiction over the claims alleged, the PARTIES, and the implementation and administration of this

DocuSign Envelope ID: D659E580-F2FB-4CEA-A4BA-E4C9A572596F

AGREEMENT; (3) preliminarily approving the AGREEMENT; (4) approving as to form and content the NOTICE and CLAIM FORM and authorizing that the NOTICE and CLAIM FORM be issued to all members of the SETTLEMENT CLASS; (5) appointing PLAINTIFFS' COUNSEL as counsel for the SETTLEMENT CLASS; (6) approving and appointing the ADMINISTRATOR; and (7) setting a date for the FINAL APPROVAL HEARING.

DD.    "PUBLICATION NOTICE" refers to the published notice agreed upon by the PARTIES and that is attached to the AGREEMENT as Exhibit C.

EE.    "QUALIFIED SETTLEMENT FUND (QSF)" refers to an account established and maintained by the ADMINISTRATOR to which DEFENDANTS shall make payment of the GROSS SETTLEMENT, and which shall be used to issue SETTLEMENT PAYMENTS to the AUTHORIZED CLAIMANTS; to make payment of PLAINTIFFS' COUNSEL'S FEES and the SERVICE AWARDS; and to pay the SETTLEMENT EXPENSES.

FF.    "RELEASED CLAIMS" refers to the released claims set forth in Section IX.

GG.    "RELEASED PERSONS" refers to DEFENDANTS, as well as each of their former, existing, or future employees, supervisors, managers, officers, directors, owners, agents, and affiliates.

HH.    "RELEASING PERSONS" refers to PLAINTIFFS and each and every member of the SETTLEMENT CLASS, as well as their respective heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, estates, personal representatives, successors-in-interest, and assigns.

II.    "RESIDUAL FUNDS" means any funds remaining in the QSF more than ninety (90) calendar days after complete distribution of the GROSS SETTLEMENT.

JJ.    "SETTLEMENT CLASS" refers to all individuals who have worked as entertainers performing exotic dancing services at the FOXY LADY at any time between May 23, 2012 and the date of the PRELIMINARY APPROVAL ORDER but excluding all individuals who OPT-OUT.

KK.    "SERVICE AWARD" refers to the monetary sum that may be approved by the COURT for payment to PLAINTIFFS in an amount not to exceed twenty-five thousand dollars and zero cents ($25,000.00) as to each PLAINTIFF. This amount shall be paid and reported as 1099 "other income."

LL.    "SETTLEMENT EXPENSES" means a monetary sum that shall be used to pay the reasonable fees, costs, and expenses charged and/or incurred by the ADMINISTRATOR in performing the services authorized in this AGREEMENT.

DocuSign Envelope ID: D659E580-F2FB-4CEA-A4BA-54C9A572596F

MM.   "SETTLEMENT PAYMENT" refers to the monetary payment to an AUTHORIZED CLAIMANT from the GROSS SETTLEMENT, which shall be calculated by PLAINTIFFS' COUNSEL in proportion to the duration of each SETTLEMENT CLASS member's service at the FOXY LADY as an entertainer performing exotic dancing services during the time period between May 23, 2012, and the date of the PRELIMINARY APPROVAL ORDER, based on information reported by the AUTHORIZED CLAIMANTS on their CLAIM FORMS and, to the extent that the PARTIES agree to be feasible and necessary, records maintained by DEFENDANTS. Subject to COURT approval, all SETTLEMENT PAYMENTS shall be allocated one-half (½) as W-2 wages, less required state and federal tax withholdings, and one-half (½) as 1099 "other income."

## III.   CERTIFICATION OF THE SETTLEMENT CLASS.

A.   The PARTIES agree to request that the COURT certify the SETTLEMENT CLASS. This AGREEMENT is contingent upon the final approval and certification by the COURT of the SETTLEMENT CLASS.

## IV.   SETTLEMENT FUND AND MORTGAGE.

A.   DEFENDANTS shall pay the GROSS SETTLEMENT, which is inclusive of all SETTLEMENT PAYMENTS to AUTHORIZED CLAIMANTS; PLAINTIFFS' COUNSEL'S FEES; the SERVICE AWARDS to PLAINTIFFS; and the SETTLEMENT EXPENSES in order to fully and finally resolve the ACTION on behalf of the SETTLEMENT CLASS.

B.   MORTGAGOR, the owner of the property located at 318 Chalkstone Avenue in Providence, Rhode Island 02908, agrees to grant to MORTGAGEE the MORTGAGE, attached as Exhibit D, and incorporated herein by reference, to secure the GROSS SETTLEMENT amount for RELEASING PERSONS.  The MORTGAGE shall be executed contemporaneously with this AGREEMENT and may be recorded in the Land Evidence Records for the City of Providence, Rhode Island as soon as practicable after such MORTGAGE is executed and delivered.  The PARTIES agree that the amount being secured by the MORTGAGE shall be incrementally reduced by the amount of each payment made pursuant to Section V.E. of this AGREEMENT. Upon timely and full payment of the GROSS SETTLEMENT amount, the MORTGAGE shall be promptly and entirely discharged and satisfied in full.  DEFENDANTS' continued failure to make any required payment pursuant to Section V.E. of this AGREEMENT within fourteen (14) calendar days after written notice of such failure from PLAINTIFFS to DEFENDANTS and their counsel, Barry Miller, Esq., shall constitute an event of default under the MORTGAGE and this AGREEMENT; provided, however, that if such failure cannot be cured by DEFENDANTS within such fourteen (14) calendar day period in the exercise of reasonable diligence, then said fourteen (14) day period shall be extended for such time as DEFENDANTS shall require to cure the same, so long as DEFENDANTS commence to cure within such fourteen (14) day period and thereafter continue with reasonable diligence to cure

DocuSign Envelope ID: D659EF80-F2FB-4CEA-A4BA-E4C9A572596F

the same, but in no event shall such extended time exceed ninety (90) days from the date of PLAINTIFFS' written notice to DEFENDANTS of DEFENDANTS' failure to make payment pursuant to Section V.E. of this AGREEMENT (an "Event of Default"). Upon the occurrence and during the continuance of an Event of Default, MORTGAGEE shall be entitled to the exercise of its rights and remedies under the MORTGAGE.

       C.     In no event shall the total distribution and payments made by DEFENDANTS, including but not limited to the SETTLEMENT PAYMENTS, PLAINTIFFS' COUNSEL'S FEES, and the SERVICE AWARDS, exceed the value of the GROSS SETTLEMENT. DEFENDANTS may not be called upon or required to contribute additional monies above the GROSS SETTLEMENT amount under any circumstances, except as provided for in Section XIV.

       D.     MORTGAGEE shall also deliver to MORTGAGOR's counsel an original, undated discharge of the MORTGAGE, which MORTGAGOR's counsel shall hold in escrow pursuant to the terms of this AGREEMENT. Upon the MORTGAGOR's timely payment in full to the MORTGAGEE of the amounts required to be paid pursuant to Section V.E below, MORTGAGOR's counsel shall be entitled to release the discharge of the MORTGAGE and deliver the same to MORTGAGOR, which shall thereafter be entitled to record the same and discharge the lien of the MORTGAGE; provided, however, if there is an EVENT OF DEFAULT and the RELEASING PERSONS promptly seek an award of attorneys' fees, expenses, and/or costs from the COURT pursuant to Section XIV, MORTGAGOR'S COUNSEL may not release the MORTGAGE to MORTGAGOR until the COURT has made a determination as to whether such award should be granted and, in the event such an award is granted by the COURT, until such time as payment of any such award is made in full by DEFENDANTS or the PARTIES agree in writing.

       E.     AUTHORIZED CLAIMANTS shall be responsible for remitting to all relevant taxing authorities any applicable other taxes due and shall hold DEFENDANTS harmless and indemnify the RELEASED PARTIES for any liabilities, costs and expenses, including attorneys' fees, assessed or caused by any such taxing authority which result from an AUTHORIZED CLAIMANT'S failure to remit taxes due on payments made to the AUTHORIZED CLAIMANT pursuant to the AGREEMENT provided that, within fourteen (14) calendar days of DEFENDANTS' receipt of notice of any such failure to remit taxes due, DEFENDANTS provide PLAINTIFFS' COUNSEL with a copy of such notice.

DocuSign Envelope ID: D659EE80-F2FB-4CEA-A4BA-E4C9A572596F

## V.    TERMS OF SETTLEMENT.

A.    After the AGREEMENT is executed by the PARTIES, PLAINTIFFS shall submit this AGREEMENT to the COURT and shall move, with DEFENDANTS' assent, for a PRELIMINARY APPROVAL ORDER. The PARTIES agree to take all reasonable steps necessary to secure a PRELIMINARY APPROVAL ORDER from the COURT.

B.    No later than fourteen (14) calendar days after issuance of the PRELIMINARY APPROVAL ORDER, DEFENDANTS shall provide PLAINTIFFS' COUNSEL with all available Performer Contact Sheets for all members of the SETTLEMENT CLASS.

C.    The date of the FINAL APPROVAL HEARING shall be set by the COURT but in no event shall such hearing occur less than one hundred ten (110) calendar days after the PRELIMINARY APPROVAL ORDER.

D.    No later than fourteen (14) calendar days prior to the FINAL APPROVAL HEARING, PLAINTIFFS shall submit this AGREEMENT (including all exhibits referenced herein) to the COURT and shall move, with DEFENDANTS' assent, for a FINAL APPROVAL ORDER, which shall include, by incorporation or otherwise, an order granting FINAL JUDGMENT.

E.    Following entry of the FINAL APPROVAL ORDER, DEFENDANTS shall pay the GROSS SETTLEMENT either by check made payable to the QSF or wire transfer directly to the QSF on the following schedule and in the following amounts:

1.    By no later than forty-five (45) calendar days after entry of the FINAL APPROVAL ORDER, or by January 15, 2022, whichever date is later: three hundred thousand dollars and zero cents ($300,000.00);

2.    By no later than January 15, 2023, or one (1) year after the payment noted in the paragraph immediately above, whichever is later: three hundred thousand dollars and zero cents ($300,000.00);

3.    By no later than January 15, 2024, or one (1) year after the payment noted in the paragraph immediately above, whichever is later: three hundred thousand dollars and zero cents ($300,000.00);

4.    By no later than January 15, 2025, or one (1) year after the payment noted in the paragraph immediately above, whichever is later: three hundred thousand dollars and zero cents ($300,000.00);

5.     By no later than January 15, 2026, or one (1) year after the payment noted in the paragraph immediately above, whichever is later: three hundred thousand dollars and zero cents ($300,000.00).

F.     Within ten (10) business days after receipt of each payment by DEFENDANTS of the GROSS SETTLEMENT, the ADMINISTRATOR shall mail SETTLEMENT PAYMENTS drawn from the QSF to all AUTHORIZED CLAIMANTS.

G.     SETTLEMENT PAYMENTS shall be issued by the ADMINISTRATOR in the form of checks to be drawn on the QSF. SETTLEMENT PAYMENT checks shall expire if not negotiated within ninety (90) calendar days. The value of all such expired SETTLEMENT PAYMENT checks shall be deemed RESIDUAL FUNDS.

H.     Neither DEFENDANTS, counsel for DEFENDANTS, PLAINTIFFS' COUNSEL, PLAINTIFFS, nor the ADMINISTRATOR shall have any liability for lost or stolen SETTLEMENT PAYMENT checks, for forged signatures on SETTLEMENT PAYMENT checks, or for unauthorized negotiation of SETTLEMENT PAYMENT checks. Without limiting the foregoing, in the event an AUTHORIZED CLAIMANT notifies the ADMINISTRATOR that she believes that a SETTLEMENT PAYMENT check has been lost or stolen, the ADMINISTRATOR shall immediately stop payment on said check. If the SETTLEMENT PAYMENT check in question has not been negotiated prior to the stop payment order, the ADMINISTRATOR shall issue a replacement check, from which the fees associated with the stop payment order will first be deducted.

I.     All unclaimed funds from each of the first four payments made by DEFENDANTS of the GROSS SETTLEMENT, as set forth in Section V.E., shall be maintained in the QSF until the fifth and final payment by DEFENDANTS of the GROSS SETTLEMENT. At the time of the fifth and final distribution of the GROSS SETTLEMENT to the AUTHORIZED CLAIMANTS by the ADMINISTRATOR, all such unclaimed funds shall be made available for a period of thirty (30) calendar days to resolve any disputes that may have arisen during the administration process concerning late or invalid claims submitted by SETTLEMENT CLASS members or disputes concerning the amount or calculation of any AUTHORIZED CLAIMANTS' SETTLEMENT PAYMENTS. To the extent any such unclaimed funds remain in the QSF more than thirty (30) calendar days after resolution of all such disputes, such funds shall be treated as RESIDUAL FUNDS and subject to disposition pursuant to Section V.J.

J.     To the extent any RESIDUAL FUNDS remain in the QSF more than ninety (90) calendar days after final distribution of the final round of SETTLEMENT PAYMENTS from the QSF, fifty percent (50%) of all such RESIDUAL FUNDS shall be donated to the CY PRES BENEFICIARY and the other fifty percent (50%) of all such RESIDUAL FUNDS shall be returned to DEFENDANTS.

DocuSign Envelope ID: D659FF89-F2FB-4CEA-A4BA-E4C9A5725965

## VI.   NOTICE AND CLAIMS PROCESS.

A.      No later than fourteen (14) calendar days after the PRELIMINARY APPROVAL ORDER, the ADMINISTRATOR shall publish a website (the "SETTLEMENT WEBSITE") containing the NOTICE, CLAIM FORM, an IRS Form W-4, and an IRS Form W-9 (or such similar and appropriate tax forms as the ADMINISTRATOR may use). The SETTLEMENT WEBSITE shall allow for electronic submission of CLAIM FORMS. The SETTLEMENT WEBSITE shall also include a printable version of the CLAIM FORM for hardcopy submission. The SETTLEMENT WEBSITE shall be active until thirty (30) calendar days prior to the scheduled date of the final payment by DEFENDANTS of the GROSS SETTLEMENT, provided, however, that the ADMINISTRATOR shall disable online CLAIM FORM submissions fourteen (14) calendar days after the BAR DATE. Counsel for the PARTIES shall have the opportunity to review and approve the SETTLEMENT WEBSITE prior to its publication.

B.      No later than fourteen (14) calendar days after DEFENDANTS have produced SETTLEMENT CLASS member information identified in Section V.B., the ADMINISTRATOR shall send a link to the SETTLEMENT WEBSITE by text message to all members of the SETTLEMENT CLASS for whom mobile telephone numbers are available.

C.      Between fourteen (14) and twenty-one (21) days after the PRELIMINARY APPROVAL ORDER, the ADMINISTRATOR shall cause the publication of the PUBLICATION NOTICE in the *Providence Journal*.

D.      In the event a member of the SETTLEMENT CLASS submits a CLAIM FORM in a timely manner, but the CLAIM FORM is incomplete or otherwise deficient, the ADMINISTRATOR shall promptly contact the individual in an effort to correct the deficiencies.

E.      In order to be an AUTHORIZED CLAIMANT, members of the SETTLEMENT CLASS must timely send a completed CLAIM FORM by mail, hand-delivery, overnight delivery service, facsimile, e-mail, or by electronic submission through the SETTLEMENT WEBSITE so that it is received by the ADMINISTRATOR on or before the BAR DATE, except as otherwise provided herein.

F.      Within fourteen (14) calendar days after the BAR DATE, the ADMINISTRATOR shall provide to PLAINTIFFS' COUNSEL and counsel for DEFENDANTS: (1) a list of all members of the SETTLEMENT CLASS who have submitted a completed CLAIM FORM; (2) a list of all members of the SETTLEMENT CLASS who filed a timely objection; (3) the total SETTLEMENT PAYMENT due to each AUTHORIZED CLAIMANT; (4) the sum allocated for employer-owed payroll taxes with respect to the W-2 portion of all SETTLEMENT PAYMENTS; and (5) an invoice for its fees, costs, and expenses

DocuSign Envelope ID: D659EE89-E2FB-4CEA-A4BA-E4C9A5725965

incurred to date. Additionally, the ADMINISTRATOR shall provide this information during the claim period on a periodic basis to counsel for either PARTY upon request.

      G.    Any member of the SETTLEMENT CLASS who fails to timely return a CLAIM FORM by the BAR DATE shall not be an AUTHORIZED CLAIMANT, provided, however, that the ADMINISTRATOR may, with permission from PLAINTIFFS' COUNSEL, accept CLAIM FORMS from SETTLEMENT CLASS members following expiration of the BAR DATE, but which are received no later than twenty (20) calendar days prior to DEFENDANTS' scheduled payment of the final installment of the GROSS SETTLEMENT. SETTLEMENT CLASS members whose CLAIM FORMS are accepted in this manner shall be deemed AUTHORIZED CLAIMANTS and may receive SETTLEMENT PAYMENTS from the GROSS SETTLEMENT, to the extent funds are available.

## VII.   SERVICE AWARDS.

      A.    PLAINTIFFS' COUNSEL shall propose the SERVICE AWARDS for approval by the COURT. Final approval is not conditioned on the COURT's approval of the requested amount for the SERVICE AWARDS, which the PARTIES agree may be adjusted or modified by the COURT.

      B.    The SERVICE AWARDS shall be paid from the GROSS SETTLEMENT. The ADMINISTRATOR shall issue a check that may be drawn from the QSF to PLAINTIFFS for the full value of the SERVICE AWARDS no later than ten (10) business days after receipt from DEFENDANTS of the first payment of the GROSS SETTLEMENT.

      C.    The SERVICE AWARDS shall be treated as non-wage "other income," and the ADMINISTRATOR shall issue a Form 1099 to PLAINTIFFS reflecting the value of the payment.

## VIII.  PLAINTIFFS' COUNSEL'S FEES.

      A.    PLAINTIFFS' COUNSEL may make an application to the COURT for an award of attorneys' fees and costs up to an amount not to exceed thirty-three and one-third (33.3%) percent of the GROSS SETTLEMENT as PLAINTIFFS' COUNSEL'S FEES. Such application shall be filed in connection with PLAINTIFFS' motion for final approval.

      B.    If the COURT rules that any amount requested by PLAINTIFFS' COUNSEL for attorneys' fees, expenses, or costs is excessive and reduces the same, the reduced amount will be deemed to be PLAINTIFFS' COUNSEL'S FEES for purposes of this AGREEMENT. Any such reduction by the Court will be allocated on a pro rata basis to the AUTHORIZED CLAIMANTS, in proportion to the value of their SETTLEMENT PAYMENTS.

C.   Payment of PLAINTIFFS' COUNSEL'S FEES to PLAINTIFFS' COUNSEL shall constitute full satisfaction of any and all obligations by DEFENDANTS and the RELEASED PERSONS to pay PLAINTIFFS' COUNSEL for attorneys' fees, expenses, or costs incurred on behalf of all members of the SETTLEMENT CLASS regarding the RELEASED CLAIMS and shall relieve the RELEASED PERSONS of any other claims or liability to any person for any attorneys' fees, expenses, and costs to which any person may claim to be entitled on behalf of any members of the SETTLEMENT CLASS for this ACTION.

D.   PLAINTIFFS' COUNSEL'S FEES shall be allocated over time from each payment of the GROSS SETTLEMENT by DEFENDANT, in proportion to the value of each such payment. The ADMINISTRATOR shall pay PLAINTIFFS' COUNSEL'S FEES to PLAINTIFFS' COUNSEL either by check or by wire transfer from the QSF within ten (10) business days after receipt of each payment from DEFENDANTS of the GROSS SETTLEMENT.

E.   PLAINTIFFS' COUNSEL'S FEES shall be treated as non-wage "other income," for which the ADMINISTRATOR shall issue a Form 1099 to PLAINTIFFS' COUNSEL.

## IX.   RELEASE OF CLAIMS.

A.   As of the FINAL EFFECTIVE DATE, and by operation of the FINAL APPROVAL ORDER, all RELEASING PERSONS shall be deemed to have forever settled, compromised, released, discharged and dismissed all claims that were alleged or that could reasonably have been alleged in the ACTION against the RELEASED PERSONS under any of the laws, regulations, statutes, and common law of any state, including the State of Rhode Island, as well as any federal, state, or local statute, ordinance, or regulation, including, without limitation, the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and Rhode Island General Laws § 28, *et seq.*, that relate to or concern in any way DEFENDANTS' classification of the SETTLEMENT CLASS members as independent contractors, the payment of wages, hours worked, or gratuities. Notwithstanding the foregoing, nothing in this AGREEMENT shall be deemed to prevent any RELEASING PERSON from cooperating with or participating in any lawful investigation or proceeding before the Equal Employment Opportunity Commission or the Rhode Island Commission for Human Rights. Further, the PARTIES agree that the above release does not apply to any rights or claims that, by law, cannot be waived.

B.   Effective as of the FINAL EFFECTIVE DATE, and in consideration for their receipt of the SERVICE AWARDS, PLAINTIFFS shall be deemed to have released and discharged the RELEASED PERSONS of all charges, claims, controversies, causes of action or damages of any nature whatsoever, known or unknown, contingent or non-contingent, which now exist or have existed upon any theory of law or equity now existing which they have, claim to have, ever had, or ever claimed to have had against DEFENDANTS through the date of execution of the AGREEMENT. This general release includes all claims under the laws, the regulations,

DocuSign Envelope ID: D659FF89-F2FB-4CEA-A4BA-E4C9A5725965

statutes and common law of any state, including the State of Rhode Island, and any federal, state, or local statute, ordinance or regulation including, without limitation, the Age Discrimination in Employment Act, Title VII of the Civil Rights Act, as amended, the Americans With Disabilities Act, as amended, the Fair Labor Standards Act, Rhode Island's wage and hour laws (including, without limitation, Rhode Island General Laws § 28, *et seq.*), the Family and Medical Leave Act, and the Employee Retirement Income Securities Act, retaliation or whistleblower claims, claims involving marital status, religion, sexual orientation, medical condition or any other anti-discrimination, anti-retaliation, or whistle-blower laws, claims for violation of public policy, wrongful discharge, breach of express or implied contract, or implied covenant of good faith and fair dealing, or any other applicable federal, state, or local statute relating to payment of wages; claims concerning recruitment, wages, tips, tip notice, bonuses, commissions, sick leave, vacation pay, or any other fringe benefits claims, libel, slander, defamation, intentional or negligent misrepresentation and/or infliction of emotional distress, together with any and all tort, fraud, negligence or gross negligence claims, contracts, and any other releasable claims. Notwithstanding the above, nothing in this general release shall prevent PLAINTIFFS from cooperating with or participating in any lawful investigation or proceeding before the Equal Employment Opportunity Commission or the Rhode Island Commission for Human Rights. Further, the PARTIES agree that this general release does not apply to any rights or claims that, by law, cannot be waived.

C.      PLAINTIFFS' COUNSEL, on behalf of the members of the SETTLEMENT CLASS, and PLAINTIFFS, on their own behalves, represent and warrant that nothing which would otherwise be released herein has been assigned, transferred, or hypothecated or purportedly assigned, transferred to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the ACTION, or any related action. As of the FINAL EFFECTIVE DATE, members of the SETTLEMENT CLASS shall be deemed to have given this warranty.

D.      All members of the SETTLEMENT CLASS who do not OPT-OUT and do not submit a valid CLAIM FORM shall be bound by the terms and conditions of this AGREEMENT, FINAL APPROVAL ORDER, the FINAL JUDGMENT, and the releases set forth herein, provided, however, that all SETTLEMENT CLASS members who do not submit a valid CLAIM FORM and become an AUTHORIZED CLAIMANT shall not release any claims based on the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*

## X.      OBJECTOR RIGHTS; EXCLUSION RIGHTS.

A.      Any member of the SETTLEMENT CLASS may object to this AGREEMENT. However, any such objection must be received by the ADMINISTRATOR on or before the BAR DATE in order to be timely. Such objection shall include the name and address of the OBJECTOR, a statement of the basis for each objection asserted, the grounds on which the OBJECTOR desires to appear and be heard (if any), and, if the OBJECTOR is represented by counsel, the name and address of counsel. No member of the SETTLEMENT CLASS may be

14

DocuSign Envelope ID: D659EF89-E2FB-4CEA-A4BA-E4C9A5725965

heard at the FINAL APPROVAL HEARING who has not complied with this requirement, and any member of the SETTLEMENT CLASS who fails to comply with this requirement shall be deemed to have waived any right to object and any objection to the AGREEMENT.

      B.     Any member of the SETTLEMENT CLASS may elect to OPT-OUT at any time during the OPT-OUT PERIOD. A valid OPT-OUT statement must be made in writing; must contain the name, address, and telephone number of the individual requesting exclusion; must be signed by the individual who is seeking exclusion; and must be submitted to the ADMINISTRATOR so that it is received on or before the BAR DATE. Any member of the SETTLEMENT CLASS who is an OPT-OUT shall not: (1) have any rights under this AGREEMENT; (2) be entitled to receive a SETTLEMENT PAYMENT; (3) have a right to object to the AGREEMENT; and (4) be bound by this AGREEMENT, the releases set forth in Section IX, the FINAL APPROVAL ORDER, or the FINAL JUDGMENT.

      C.     DEFENDANTS agree that they shall take no action to encourage, in any way, SETTLEMENT CLASS members to OPT-OUT, object, or to refrain from submitting CLAIM FORMS.

## XI.   CLAIMS ADMINISTRATION.

      A.     The ADMINISTRATOR will perform all of the administrative duties assigned herein, including: (1) assisting PLAINTIFFS' COUNSEL with calculating the SETTLEMENT PAYMENTS for each member of the SETTLEMENT CLASS; (2) formatting and publishing the NOTICE and CLAIM FORM, and issuing the NOTICE and CLAIM FORM to members of the SETTLEMENT CLASS in the manner set forth in Section VI; (3) issuing notice of this settlement to the appropriate state and federal authorities pursuant to 28 U.S.C. § 1715; (4) periodically notifying counsel of CLAIM FORM submissions; (5) notifying counsel for the PARTIES of any material requests for information made by any SETTLEMENT CLASS member; (6) receiving and reviewing CLAIM FORMS; (7) promptly furnishing to PLAINTIFFS' COUNSEL and DEFENDANTS' counsel copies of any objections which the ADMINISTRATOR receives; (8) mailing SETTLEMENT PAYMENTS to all AUTHORIZED CLAIMANTS; (9) remitting payment of PLAINTIFFS' COUNSEL'S FEES in accordance with the AGREEMENT; (10) remitting payment of the SERVICE AWARDS to PLAINTIFFS; (11) responding to inquiries from members of the SETTLEMENT CLASS regarding the procedures for submitting CLAIM FORMS and objections; (12) contacting counsel for the PARTIES about all inquiries by members of the SETTLEMENT CLASS regarding matters not within the ADMINISTRATOR'S duties specified herein, except that any correspondence from members of the SETTLEMENT CLASS that is addressed to PLAINTIFFS' COUNSEL but is received by the ADMINISTRATOR shall be provided solely to PLAINTIFFS' COUNSEL; (13) maintaining adequate records of its activities, including the dates on which NOTICE is issued or published, receipt of CLAIM FORMS, the mailing of SETTLEMENT PAYMENTS, and attempted communications with members of the SETTLEMENT CLASS; (14) confirming in a declaration its completion of the administration of

the AGREEMENT; (15) timely responding to communications from the PARTIES or their counsel or members of the SETTLEMENT CLASS; (16) calculating and paying the DEFENDANTS' portion of taxes on SETTLEMENT PAYMENTS; (17) performing all tax reporting duties required by federal, state, or local law or this AGREEMENT; (18) ensuring that AUTHORIZED CLAIMANTS and PLAINTIFFS' COUNSEL are provided with W-2 and 1099 forms as appropriate; (19) setting up the QSF to which DEFENDANTS shall make payment of the GROSS SETTLEMENT pursuant to the AGREEMENT; (20) remitting to the PARTIES all amounts required under the terms of the AGREEMENT; (21) protecting SETTLEMENT CLASS members' personal data from public disclosure; (22) maintaining reasonable administrative, physical, and technical controls that will protect the confidentiality, security, integrity, and availability of personal data of the members of the SETTLEMENT CLASS; (23) maintaining all records, electronic or otherwise, relating to the administration of this AGREEMENT, for a period of two (2) years after the date of FINAL JUDGMENT; (24) such other tasks contained in the AGREEMENT or as the PARTIES agree.

B.     PLAINTIFFS' COUNSEL and DEFENDANTS' counsel have the right to review and approve any documents to be mailed by the ADMINISTRATOR prior to their mailing, and the ADMINISTRATOR may not mail any documents without first receiving written approval to send the documents from PLAINTIFFS' COUNSEL and DEFENDANTS' counsel.

C.     The ADMINISTRATOR will provide regular reports to the PARTIES regarding: (1) the status of the NOTICE process; (2) a summary of the number of AUTHORIZED CLAIMANTS, OBJECTORS, and OPT-OUTS; (3) a summary of members of the SETTLEMENT CLASS who submit an incomplete or defective CLAIM FORM with a description of steps taken to notify the claimant to cure the defect; (4) the claims administration process deadlines; (5) distribution of SETTLEMENT PAYMENT checks, and other matters relating to the SETTLEMENT PAYMENT; and (6) the number of members of the SETTLEMENT CLASS for whom it was unable to locate a valid mailing address or other contact information.

D.     The ADMINISTRATOR will stamp the date of receipt on the original of each objection that it receives (if received by mail) and shall serve copies of each on the PARTIES' counsel no later than three (3) calendar days after receipt thereof. The ADMINISTRATOR will, within three (3) calendar days of the BAR DATE, send a final list of all objection statements to the PARTIES' counsel by email. The ADMINISTRATOR will retain the stamped originals of all objections and originals of all accompanying envelopes in its files until such time as the ADMINISTRATOR is relieved of its duties and responsibilities under this AGREEMENT, at which point all originals will be mailed to DEFENDANTS' counsel, one copy of each will be mailed to PLAINTIFFS' COUNSEL, and all other copies will be destroyed.

DocuSign Envelope ID: D659EF69-53FB-4CFA-A4BA-E4C9A5725D6E

## XII.    TERMINATION OF THE SETTLEMENT AGREEMENT.

A.    PLAINTIFFS or DEFENDANTS, through their respective counsel, may terminate the AGREEMENT if the COURT declines to enter or places conditions not contemplated by this AGREEMENT on the entry of a FINAL APPROVAL ORDER or FINAL JUDGMENT in a form materially similar to the form submitted by the PARTIES, or the AGREEMENT does not become final for any other reason, or a Court of Appeals reverses the entry of a FINAL APPROVAL ORDER or FINAL JUDGMENT. However, the PARTIES agree to work cooperatively to attempt to cure any issues raised by the COURT relating to approval of the settlement, as long as resolution of any such issues would not increase the GROSS SETTLEMENT.

B.    To terminate this AGREEMENT, the terminating counsel (i.e., PLAINTIFFS' COUNSEL or counsel for DEFENDANTS) shall give written notice to the opposing counsel within fifteen (15) business days of such PARTY's receipt of actual notice of the event providing grounds for such termination.

C.    In the event that this AGREEMENT is canceled, rescinded, terminated, voided, or nullified, however that may occur, or the settlement of the ACTION is barred by operation of the law, is invalidated, is not approved or otherwise is ordered not to be carried out by any COURT, this AGREEMENT shall be terminated, shall have no force or effect, and no PARTY shall be bound by any of its terms. Further, in the event of said termination, the PARTIES will be immediately restored to their respective positions in the ACTION as of the date immediately preceding the execution of their Confidential Memorandum of Understanding.

D.    In the event the AGREEMENT is terminated, DEFENDANTS shall have no obligation to make any payments to any PARTY, PLAINTIFF, member of the SETTLEMENT CLASS, PLAINTIFFS' COUNSEL or the ADMINISTRATOR.

## XIII.  CONSTRUCTION AND INTERPRETATION.

A.    The PARTIES agree to fully cooperate with each other to accomplish the terms of the AGREEMENT, including, but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement the terms of the AGREEMENT. The PARTIES shall use reasonable efforts, including all efforts contemplated by the AGREEMENT and any other reasonable efforts that may become necessary by order of the COURT, or otherwise, to effectuate the AGREEMENT and the terms set forth herein. PLAINTIFFS and PLAINTIFFS' COUNSEL shall, with the assistance and cooperation of DEFENDANTS and DEFENDANTS' counsel, take reasonable steps to secure the COURT'S final approval of the AGREEMENT.

B.    The PARTIES hereto agree that the terms and conditions of the AGREEMENT are the result of lengthy, intensive, arm's length negotiations among the PARTIES and their

DocuSign Envelope ID: D659EF89-52FB-4CEA-A4BA-E4C9A5725965

counsel, and the AGREEMENT shall not be construed in favor of or against any PARTY by reason of the extent to which any PARTY or his, her, or its counsel participated in the drafting of the AGREEMENT.

C.      Paragraph titles are inserted as a matter of convenience and in no way define, limit, extend, or describe the scope of this AGREEMENT or any of its provisions. Each term of this AGREEMENT is contractual and not merely a recital.

D.      This AGREEMENT shall be subject to and governed by the laws of the State of Rhode Island and subject to the continuing jurisdiction of the COURT. The PARTIES agree that the COURT shall retain jurisdiction to enforce the terms of this AGREEMENT and to resolve any disputes concerning the AGREEMENT, unless specifically set forth otherwise herein.

E.      The PARTIES agree they must reach agreement on the form and content of the AGREEMENT and its exhibits, the PRELIMINARY APPROVAL ORDER, FINAL APPROVAL ORDER, and the motions for approval.

F.      This AGREEMENT sets forth the entire agreement between the PARTIES hereto. This AGREEMENT modifies and supersedes the Confidential Memorandum of Understanding and all other prior agreements, covenants, understandings, promises, and representations between the PARTIES regarding the subject matter of this AGREEMENT. The PARTIES agree that the PARTIES have not relied on any promises or representations that are not expressly set forth in this AGREEMENT.

G.      The PARTIES expressly recognize and agree that entering into this AGREEMENT does not in any way constitute an admission of liability or any wrongdoing by any PARTY.

H.      No rights hereunder may be waived or modified except in a writing signed by duly authorized representatives of the PARTIES.

I.      The AGREEMENT may be executed in counterparts. Each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one AGREEMENT, which shall be binding upon and effective as to all PARTIES.

## XIV.  ENFORCEMENT; ACCELERATION.

A.      In the event a PARTY seeks to enforce the terms of this AGREEMENT or collect on any payments due under the terms of this AGREEMENT, notice must be mailed to opposing counsel for the respective PARTY. The PARTIES shall meet and confer in a good faith attempt to resolve the matter within fourteen (14) calendar days of the notice. In the event those efforts are unsuccessful and one or more of the PARTIES attempts to institute any legal action or other proceeding against any other PARTY or PARTIES to enforce the provisions of this

AGREEMENT, or to otherwise exercise any and all rights under the MORTGAGE, or to declare rights and/or obligations under this AGREEMENT, or to collect on any payments due under the terms of this AGREEMENT, the prevailing PARTY in such an enforcement action may be awarded reasonable attorneys' fees, expenses, and costs.

       B.     DEFENDANTS hereby agree that upon any transaction or series of transactions that would result in a transfer, sale, assignment or encumbrance of more than fifty percent (50%) of an ownership interest or the equity in either Gulliver's Tavern, Incorporated, Solid Gold Properties, Inc., or both, the net revenues from such transaction(s), not to exceed the total unpaid amount of the GROSS SETTLEMENT at that time regardless of whether any installment payment under Section V.E. of this AGREEMENT is then due and outstanding, shall be paid directly to the QSF. Said payment(s) shall be applied toward the satisfaction of the GROSS SETTLEMENT at the time of said transaction(s).

IN WITNESS WHEREOF, the undersigned have duly executed this AGREEMENT on
8/30/2021

 

DocuSigned by:

GULLIVER'S TAVERN, INCORPORATED       RUBY LEVI
EC2025A6DDA9494...

 

DocuSigned by:

SOLID GOLD PROPERTIES, INC.       EMILY CHICOINE
F358640C8CD04F8...

 

DocuSigned by:
Brant Casavant
550942E738F44BD...

PLAINTIFF'S COUNSEL,
By BRANT CASAVANT, Fair Work P.C.

DocuSign Envelope ID: D659EF89-E2FB-4CFA-A4BA-E4C9A572596E

**Exhibit A**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| RUBY LEVI and EMILY CHICOINE, on behalf of themselves and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civ. A. No. 1:15-cv-216-WES-PAS |
| GULLIVER'S TAVERN, INCORPORATED, and SOLID GOLD PROPERTIES, INC., both d/b/a THE FOXY LADY | ) ) ) ) | |
| Defendants. | ) ) | |

**NOTICE OF CLASS ACTION SETTLEMENT**
**PLEASE READ THIS NOTICE CAREFULLY**
YOU MAY BE ELIGIBLE TO RECEIVE MONEY FROM THIS SETTLEMENT
AND YOUR RIGHTS WILL BE AFFECTED BY THESE PROCEEDINGS

## 1.   WHAT IS THIS?

This is a notice about a proposed settlement in a lawsuit between Ruby Levi, Emily Chicoine, Gulliver's Tavern, Incorporated, and Solid Gold Properties, Inc. **This is not an advertisement or a solicitation.** The United States District Court for the District of Rhode Island has authorized us to send you this notice.

## 2.   WHY DID I GET THIS NOTICE?

You received this notice because you may be eligible to participate in a proposed settlement of a class and collective action lawsuit involving individuals who performed as exotic dancers at the Foxy Lady located at 318 Chalkstone Avenue in Providence, Rhode Island (the "Foxy Lady") between May 23, 2012 and [DATE OF PRELIMINARY APPROVAL]. As a result of that proposed settlement, you may be eligible to receive money, and your legal rights will be affected.

## 3.   WHAT WAS THE LAWSUIT ABOUT?

The plaintiffs who brought this lawsuit were Ruby Levi and Emily Chicoine. They alleged that the defendants misclassified entertainers who performed as exotic dancers at the Foxy Lady as independent contractors, rather than employees. As a result of their independent contractor

DocuSign Envelope ID: D659FF89-F2FB-4CEA-A4BA-E4C9A5725965

status, the plaintiffs alleged that the defendants had failed to pay the entertainers at the Foxy Lady the statutory minimum wage; had improperly required the entertainers to pay house fees and fines; and had not allowed the entertainers to retain all of their gratuities.

The defendants dispute these claims and deny that they engaged in any wrongdoing of any kind. The defendants' position throughout the lawsuit was that their practices complied with all relevant laws and that the entertainers who worked at the Foxy Lady were properly treated as independent contractors. However, the parties wished to avoid the further burden, expense, and risk inherent in continued litigation; so, they have reached this proposed settlement.

## 4.     WHO CAN PARTICIPATE IN THIS SETTLEMENT?

All individuals who have worked as entertainers providing exotic dancing services at the Foxy Lady between May 23, 2012 and [DATE OF PRELIMINARY APPROVAL], are eligible to participate in this proposed settlement.

## 5.     WHAT ARE THE TERMS OF THE SETTLEMENT?

The defendants have agreed to pay $1,500,000 to fully and finally resolve the lawsuit on behalf of everyone who has worked as an entertainer providing exotic dancing services at the Foxy Lady since May 23, 2012. Payments to eligible entertainers who participate in this settlement will be calculated in proportion to how long they worked at the Foxy Lady during the relevant period. Settlement proceeds that are not allocated to attorneys' fees and costs, service awards, administrative expenses, or payroll taxes may be distributed to those individuals who timely submit valid claim forms. Any residual funds following complete distribution of the settlement (e.g. from uncashed checks) will be held for 120 days, after which time such funds will be split evenly between the [cy pres organization designated by defendants] and the defendants.

Subject to Court approval, up to one-third of that the settlement fund ($500,000) will be paid to plaintiffs' counsel to compensate them for their legal fees and costs. In addition, and also subject to Court approval, service awards of $25,000 will be paid to each of the two plaintiffs in order to compensate them for them time, effort, the risks they incurred pursuing this lawsuit on behalf of the class, and the rights they are releasing in order to effectuate this settlement.

A third-party company is administering the settlement. The costs of retaining that administrator will also be paid from the total settlement amount. After deduction for these items (i.e. attorneys' fees and costs, the service awards, and administrative expenses), the remainder of the settlement fund will be distributed to all eligible individuals who timely submit the claim and tax forms that accompany this notice.

DocuSign Envelope ID: D659EE89-F2FB-4CEA-A4BA-E4C9A5725965

This proposed settlement is subject to approval by the United States District Court for the District of Rhode Island. On _____, the Court preliminarily approved this settlement and authorized the parties to send you this notice. The Court has now scheduled a final approval hearing for _____ at _____ ___. That hearing will take place at the United States District Court for the District of Rhode Island in courtroom ___. The courthouse is located at One Exchange Terrace in Providence, Rhode Island 02903. At that hearing, the Court will consider whether to grant final approval of this settlement.

6.      **WHAT ARE MY OPTIONS?**

You have four options: (1) submit a claim form in order to receive payment from the settlement; (2) object to the settlement; (3) opt out of the settlement; or (3) do nothing. Each option is explained below.

>     A.      **OPTION ONE: Submit a claim form.**

In order to ensure that you are eligible to receive a payment from the settlement, you must submit a claim form by no later than ##**60 days from notice date**##. You can submit the claim form online by clicking the link below:

(CLAIM FORM)

You can also print out the claim form and submit it by mail, email, or fax to the following address:

>     Optime Administration
>     P.O. Box. 3206
>     Brockton, MA 02304
>     Fax    [INSERT]
>     Email  [INSERT]

**If your claim form is not received by** ##60 days from notice##**, you may not be eligible to receive a payment from the settlement fund.** However, if you do not opt out, you will still be bound by the terms of the settlement and your claims against the defendants will still be released. Please note that the settlement payment you receive may be taxable, so you should contact a tax advisor with any questions regarding that matter.

>     B.      **OPTION TWO: Object.**

Any class member who believes she has reason to object to the parties' settlement may do so by submitting a written statement to the administrator no later than ##60 days from notice##. The

DocuSign Envelope ID: D659E589-E2FB-4CEA-A4BA-E4C9A5725995

administrator's information is listed in section 6.A. and on the claim form that accompanies this notice. The administrator will provide a copy of your objection to the attorneys for the parties, who will file your objection with the Court. Any written objection must include your name, address, and telephone number; a clear explanation as to why you are objecting to the settlement; a statement of whether you are represented by counsel (and the contact information for your counsel); whether you or your counsel will appear at the final approval hearing; and your signature. Note that, even if you submit an objection, you must still timely submit a claim form and tax form to receive any portion of the settlement, in the event the Court overrules your objections and approves the settlement.

### C.    OPTION THREE: Opt out.

If you wish to exclude yourself from this settlement, you must submit a written request for exclusion to the administrator no later than ##60 days from notice##. The administrator's information is listed in section 6.A. and on the claim form that accompanies this notice. To be effective, your exclusion request must state that you request to be excluded from or "opt out" of the settlement in *Levi v. Gulliver's Tavern, Incorporated*, Case No. 1:15-cv-00216, and must include your name, address, and telephone number, be signed by you, and should state that you understand that by excluding yourself from the settlement, you will receive no funds in conjunction with the case.

If you exclude yourself, you will not be eligible to receive any settlement payment. If you do not timely return a request to be excluded, you will remain a member of the class of people who are subject to this settlement and you will be bound by any final judgment entered in the case and by the release of claims set forth in section 7 of this notice. If you timely submit a valid request to be excluded from the settlement, you will not be bound by any final judgment, and will not be bound by the release of claims set forth in section 7.

### D.    OPTION FOUR: Do nothing.

If you do nothing, and if the Court approves the settlement at the hearing on _____, you will be bound by the settlement – including any judgment entered in this case and the release of claims set forth in section 7, below – but will not receive any money.

### 7.    WHAT CLAIMS WILL I RELEASE IF I DO NOT OPT OUT?

If you do not opt out of the settlement, regardless of whether you submit a claim form and receive any settlement funds, you will be deemed to have forever settled, compromised, released, discharged and dismissed all claims that were alleged or that could reasonably have been alleged in this lawsuit against Gulliver's Tavern, Incorporated, and Solid Gold Properties, as well as each of their former, existing, or future employees, supervisors, managers, officers, directors, owners,

DocuSign Envelope ID: D650EE09-52FB-4CEA-A4BA-E4C9A5725965

agents, and affiliates, under any of the laws, regulations, statutes, and common law of any state, including the State of Rhode Island, as well any federal, state, or local statute, ordinance, or regulation, including, without limitation, the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and Rhode Island General Laws § 28, *et seq.*, that relate to or concern the defendants' classification of entertainers at the Foxy Lady as independent contractors, the payment of wages, hours worked, or gratuities.

**9.      DO I NEED TO ATTEND THE FINAL APPROVAL HEARING?**

No. You are welcome to attend the Court hearing on _____, but you are not required to do so.

**10.     WHO WILL ANSWER MY QUESTIONS ABOUT THE SETTLEMENT?**

If you have any questions, please contact the plaintiff's attorneys:

| | |
|---|---|
| Brant Casavant, Esq. | Stephen Brouillard, Esq. |
| Fair Work P.C. | Bianchi & Brouillard P.C. |
| 192 South Street, Suite 450 | The Hanley Building |
| Boston, MA 02111 | 56 Pine Street, Suite 250 |
| brant@fairworklaw.com | Providence, RI 02903 |
| (617) 231-6777 | sbrouillard@bbrilaw.com |

**<u>Do not contact the Court directly about this matter.</u>**
**The Court cannot provide you with legal advice or any opinion**
**regarding the case or the proposed settlement.**

**Exhibit B**

*RUBY LEVI and EMILY CHICOINE, et al. v.*

*GULLIVER'S TAVERN, INCORPORATED and SOLID GOLD PROPERTIES, INC., d/b/a THE FOXY LADY*

United States District Court for the District of Rhode Island

Case No. 1:15-cv-00216-WES-PAS

### Claim Form & Release

To receive a settlement payment, you must complete this claim form and accompanying tax form. Forms may be submitted online or by mail, fax, or email to:

Optime Administration

P.O. Box. 3206

Brockton, MA 02304

Fax    [INSERT]

Email   [INSERT]

First Name: _____    Last Name: _____

Street: _____

City / Town: _____   State: _____   Zip Code: _____

Phone: _____   Email: _____

What stage names did you use at the Foxy Lady? _____

_____

What were the approximate dates that you worked as an entertainer at the Foxy Lady? _____

_____

_____

How many shifts per week did you generally work as an entertainer at the Foxy Lady? _____

_____

### Please sign below

I attest, under the penalties of perjury, that the information I have provided is true and accurate to the best of my knowledge. Also, by signing below and in consideration for my share of the settlement fund, I understand that am forever settling, compromising, releasing, discharging and dismissing all claims that were alleged or that could reasonably have been alleged in this lawsuit captioned *Levi, et al. v. Gulliver's Tavern, Incorporated, et al.*, Case No. 1:15-cv-00216-WES-PAS, against Gulliver's Tavern, Incorporated, and Solid Gold Properties, as well as each of their former, existing, or future employees, supervisors, managers, officers, directors, owners, agents, and affiliates, under any of the laws, regulations, statutes, and common law of any state, including the State of Rhode Island, as well any federal, state, or local statute, ordinance, or regulation, including, without limitation, the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and Rhode Island General Laws § 28, *et seq.*, that relate to or concern the defendants' classification of entertainers at the Foxy Lady as independent contractors, payment of wages, hours worked, or gratuities.

_____        _____

*(Signature)*                                    *(Date*

DocuSign Envelope ID: D659EE89-F2FB-4CEA-A4BA-E4C9A572596F

Exhibit C

DocuSign Envelope ID: D659FF89-F2FB-4CEA-A4BA-E4C9A5725996E

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT
## CONCERNING ENTERTAINERS AT THE FOXY LADY, PROVIDENCE

### THIS IS A COURT-APPROVED NOTICE
**The United States District Court for the District of Rhode Island has
authorized publication of this notice**

If you have performed as an exotic dancer at the Foxy Lady located at 318
Chalkstone Avenue in Providence, Rhode Island at any time between May
23, 2012 and [DATE OF PRELIMINARY APPROVAL], you may be subject to
a proposed class action settlement in the lawsuit *RUBY LEVI and EMILY
CHICOINE, et al. v. GULLIVER'S TAVERN, INCORPORATED and SOLID GOLD
PROPERTIES, INC.*, Case No. 1:15-cv-00216-WES–PAS, currently pending in
the United States District Court for the District of Rhode Island. As a result
of that settlement, you may be eligible to receive money and your legal
rights will be affected.

**If you would like more information about the terms of the settlement
and your legal options to participate, exclude yourself, or object, please
visit [WEBSITE ADDRESS] or contact Optime Administration at
[TELEPHONE] or at [EMAIL ADDRESS].**

Do not contact the Court directly about this matter.
The Court cannot provide you with legal advice or any opinion
regarding the case or the proposed settlement.

**Exhibit D**

DocuSign Envelope ID: D659FE89-F2FB-4CEA-A4BA-E4C9A5725965

# MORTGAGE

This Mortgage (the "Mortgage") is made by **SOLID GOLD PROPERTIES, INC.**, a Rhode Island corporation having a principal place of business at 318 Chalkstone Avenue, Providence, Rhode Island 02908 (the "Mortgagor") in favor of **STEPHEN J. BROUILLARD, ESQ.**, an individual with a principal place of business at 56 Pine Street, Suite 250, Providence, Rhode Island 02903, **BRANT CASAVANT, ESQ.** and **STEPHEN CHURCHILL, ESQ.**, individuals having a principal place of business at 192 South Street, Suite 450, Boston, Massachusetts 02111 (collectively, the "Mortgagees") on behalf of, solely for the benefit of and as agents for each and every member of the settlement class approved or to be approved by the United States District Court for the District of Rhode Island in *Ruby Levi and Emily Chicoine, on behalf of themselves and all others similarly situated v. Gulliver's Tavern, Incorporated and Solid Gold Properties, Inc.*, Case No. 1:15-cv-00216-PAS ("Settlement Class").

KNOW ALL MEN BY THESE PRESENTS, that Mortgagor, for valuable consideration, the receipt and sufficiency of which are hereby acknowledged, does hereby irrevocably give, grant, bargain, sell, and convey to Mortgagees, with MORTGAGE COVENANTS, UPON THE STATUTORY CONDITION, AND WITH THE STATUTORY POWER OF SALE, the land and all improvements thereon or hereafter constructed thereon at 318 Chalkstone Avenue, Providence, Rhode Island 02908 all as more particularly described on **Exhibit A** attached hereto (the "Premises"), for the purpose of securing all present and future Indebtedness and Liabilities (as defined below) of both Mortgagor and Gulliver's Tavern, Incorporated to the Settlement Class.

As used herein, "Indebtedness and Liabilities" shall refer to and mean all indebtedness, obligations and liabilities of both Mortgagor and Gulliver's Tavern, Incorporated to the Settlement Class arising under and/or relating to that certain Stipulation and Settlement Agreement ("Settlement Agreement") of even date herewith made by and among Mortgagor, Gulliver's Tavern, Incorporated and the Settlement Class.

**This Mortgage is made upon the statutory condition and upon the further condition that if there is an "Event of Default" by Mortgagor and/or Gulliver's Tavern, Incorporated under the Settlement Agreement, or Mortgagor fails to perform or fulfill any of its obligations required hereunder without timely curing such failure pursuant to Section 3 of this Mortgage, either of which shall constitute a default hereunder ("Mortgage Default"), then Mortgagees shall have the statutory power of sale.**

Property Addresses:  318 Chalkstone Avenue, Providence, Rhode Island 02908

Mortgagor hereby further covenants to and agrees with Mortgagees as follows.

1. <u>Payment of Taxes and Assessments</u>. Mortgagor shall promptly pay when due all governmental and other assessments related to the Premises including taxes, water assessments, sewer assessments, charges, claims, and encumbrances which may be assessed to, levied on, or constitute a lien on the Premises or upon Mortgagor or Mortgagees as related hereto. Mortgagor shall have the right hereunder to contest any such taxes, assessments, or charges in good faith and with due diligence by appropriate proceedings provided that Mortgagor shall have set aside adequate amounts in reserve to satisfy such taxes, assessments, or charges prior to a tax or related sale of the Premises. Mortgagees shall provide written notice to Mortgagor of any failure by Mortgagor to perform or fulfill its obligations under this Section 1 and Mortgagor shall have twenty-one (21) calendar days after such written notice to cure such failure ("21-Day Cure Period"); <u>provided</u>, <u>however</u>, that if such failure cannot be cured by Mortgagor within such 21-Day Cure Period in the exercise of reasonable diligence, then said 21-Day Cure Period shall be extended for such time as Mortgagor shall require to cure the same, so long as Mortgagor commences to cure within such 21-Day Cure Period and thereafter continues with reasonable diligence to cure the same, but in no event shall such extended time exceed forty-five (45) days from the date of Mortgagees' written notice to Mortgagor of Mortgagor's failure to perform or fulfill its obligations hereunder ("Extended Cure Period").

2. <u>Insurance</u>. Mortgagor shall maintain on any buildings or improvements located on the Premises insurance against loss by fire and hazards. All such insurance shall be maintained in an amount equal to the full replacement cost of any and all buildings or improvements whatsoever included in the Premises. Mortgagor shall maintain as related to the Premises general liability insurance, specifically including but not limited to liquor liability coverage, against claims of bodily injury, death and/or property damage occurring on the Premises with liability limits not less than One Million Dollars ($1,000,000). Mortgagees shall provide written notice to Mortgagor of any failure by Mortgagor to perform or fulfill its obligations under this Section 2 and Mortgagor shall have seven (7) calendar days after such written notice to cure such failure ("7-Day Cure Period"); <u>provided</u>, <u>however</u>, that if such failure cannot be cured by Mortgagor within such 7-Day Cure Period in the exercise of reasonable diligence, then said 7-Day Cure Period shall be extended for such time as Mortgagor shall require to cure the same, so long as Mortgagor commences to cure within such 7-day Cure Period and thereafter continues with reasonable diligence to cure the same, but in no event shall such extended time exceed forty-five (45) days from the date of Mortgagees' written notice to Mortgagor of Mortgagor's failure to perform or fulfill its obligations hereunder ("Extended Cure Period"). Mortgagor is entitled to only one Extended Cure Period per calendar year.

3. <u>Remedies on Default.</u> Upon the occurrence and during the continuance of any Event of Default under the Settlement Agreement and/or a Mortgage Default hereunder, Mortgagees, at

DocuSign Envelope ID: D659EF89-F2FB-4CEA-A4BA-E4C9A572596E

their option and to the extent permitted by law, may foreclose on the Premises.  Any failure by Mortgagees to exercise said option shall not constitute a waiver of the right to exercise the same at any other time.

     5.   <u>Amendment/Assignment</u>.  No modification, amendment, assignment or transfer of this Mortgage, whether in whole or in part, shall be effective unless made in writing and signed by Mortgagor and Mortgagees.

     6.   <u>Governing Law</u>.  This Mortgage is being delivered and is intended to be performed in the State of Rhode Island, and shall be construed and enforced in accordance with the laws of that state without reference to the rules of conflicts of laws thereof.  In any litigation connected with or arising out of this Mortgage, the parties hereto hereby consent to and confer exclusive jurisdiction on the courts of the State of Rhode Island and on the United States District Court for the District of Rhode Island, and hereby expressly waive any objections to venue and any defenses respecting an inconvenient forum in any such courts.

Signed as a sealed instrument this _____ day of _____, 20__.

**[Remainder of page left intentionally blank]**

DocuSign Envelope ID: D659EF89-53FB-4CEA-A4BA-E4C9A5725965

**MORTGAGOR**:

SOLID GOLD PROPERTIES, INC.,
a Rhode Island corporation

By:_____
Name:
Title:

STATE OF RHODE ISLAND

_____ County,                                          _____ __, 20___

      On this ____ day of _____, 20__, me, the undersigned Notary Public, personally appeared _____, whose identity was proved to me through satisfactory evidence of a picture identification/Driver's License to be the person whose name is signed on the within document, whose swore and affirmed to me that she signed the document voluntarily for its stated purpose, as _____ of Solid Gold Properties, Inc.

_____
Notary Public
My Commission Expires:_____

DocuSign Envelope ID: D650FF89-F2FB-4CEA-A4BA-E4C9A5725965

## EXHIBIT A TO MORTGAGE

**Legal Description**

**[to be inserted]**